IN THE CIRCUIT COURT OF MONONGALIA COUNTY, WEST VIRGINIA

TIMOTHY SHAFFER
and MARY SHAFFER,

      Plaintiffs,

v.

      Civil Action No.: 17-C-389
      Judge _____

National Health Insurance Company,
and Meritain Health, Inc.

      Defendants.

## COMPLAINT

1. Plaintiffs Timothy and Mary Shaffer bring this case against defendants, National Health Insurance Company ("NHIC") and Meritain Health, Inc. ("MHI") pursuant to the Unfair Trade Practices Act ("UTPA"), West Virginia's common law of contract and first-party insurance bad faith. They seek damages for economic loss, damages for subjecting the plaintiffs to substantial stress, anguish, aggravation, inconvenience and emotional distress, punitive damages, and attorney fees and costs.

2. Plaintiffs Timothy and Mary Shaffer are and were, at all time relevant hereto, residents of West Virginia.

3. Pursuant to W. Va. Code § 48-29-303, plaintiffs are each liable for the reasonable and necessary medical expenses for care rendered by a physician to each other.

4. Defendant National Health Insurance Company ("National") is and was, at all times relevant hereto, a foreign corporation authorized to do business in the State of West Virginia and is and was doing business providing health insurance to individuals in West Virginia.

5. Defendant Meritain Health, Inc. ("Meritain") is and was, at all times relevant hereto,


EXHIBIT C

a foreign corporation authorized to do business in the State of West Virginia and, is and was doing business in West Virginia. Meritain holds itself out as an Aetna Company.

6. On or about July 1, 2015, plaintiffs purchased health insurance policies from National after Mr. Shaffer was laid-off from his coal mine employment. This insurance was not purchased through an employer.

7. Mr. and Mrs. Shaffer had to purchase the policies because, on or about May 29, 2015, Mr. Shaffer was laid off by his coal mine employer and lost his employment benefits, including medical insurance.

8. Although Mr. Shaffer was eligible for COBRA benefits following his layoff, he could not afford the premiums required for a COBRA policy and, in any event, his employer never provided the COBRA papers necessary to purchase a COBRA policy.

9. The health insurance policies that covered plaintiffs as insureds were effective on or about July 1, 2015.

10. All premiums for the health insurance policies were paid by Mr. and Mrs. Shaffer in a timely manner.

11. During the period that the policies were in effect, plaintiffs and/or their medical providers provided proper notice to the defendants of plaintiffs' health insurance claims and complied with all of their obligations under the health insurance policies in order to obtain payment of the plaintiffs' medical bills that were covered by those policies. In almost every case, defendants refused to pay plaintiffs' claims for health insurance benefits.

12. Defendants are doing business in Monongalia County, West Virginia; a major portion of the medical bills that defendants have thus far failed to pay, in whole or in part, were incurred in Monongalia County, including – but not limited to – Monongalia General Hospital. Defendants have, pursuant to the plaintiffs' health insurance policies, communicated with medical providers in Monongalia County. Furthermore, on information and belief, defendants hold themselves out as sellers or potential sellers of health insurance policies to residents of Monongalia County and/or as entities responsible for paying medical providers located in Monongalia County.

13. In January 2016, long after plaintiffs paid their first premium, Mr. Shaffer was diagnosed with cancer.

14. Mr. Shaffer underwent treatment for his cancer, incurring substantial medical bills including, but not limited to, bills for diagnostic procedures, testing clinic visits, radiation treatment and other medical care.

15. Under the health insurance policies, defendants were obligated to approve and pay substantial medical bills for Mr. Shaffer's cancer treatment and other medical expenses.

16. Mrs. Shaffer also had one or more medical bills that should have been covered by the policies, but that were not paid by the defendants.

17. Instead of paying plaintiffs' medical bills, Meritain and/or National repeatedly denied payment, often on the basis of an allegation that defendants needed additional information from the medical providers.

18. Although defendants advised plaintiffs that they needed more information for some claims, the Explanation of Benefits ("EOBs") sent to the plaintiffs failed to explain exactly what additional information the defendants needed in order to approve and pay the claims.

19. Likewise, defendants sent letters to plaintiffs alleging that they had requested more information from medical providers without explaining the specific information defendants allegedly needed in order pay the claims.

20. Defendants further failed to provide reasonable explanations as to why the claims were not being paid.

21. Mrs. Shaffer also spoke to defendants asking what information they needed to pay the claims and, when she was told that pharmaceutical records for needed, she provided those records to defendants, but the claims were still not paid.

22. Contrary to the allegations of the defendants, plaintiffs and their medical providers did provide reasonable and adequate documentation of the bills for medical care, diagnosis and treatment received by plaintiffs and they reasonably responded to the requests of defendants for more information.

23. In fact, at one point Mary Shaffer was advised that the defendants only needed pharmacy records for a specified period of time. She timely provided the records, but defendants still have not paid most of the bills from plaintiffs' medical providers.

24. On information and belief, the medical providers who cared for, diagnosed or otherwise treated Mr. Shaffer also provided the defendants with whatever reasonable information the defendants requested.

25. Although the plaintiffs fully complied with their duties pursuant to the health insurance policies in order to have their medical bills paid by the defendants, the defendants have failed to pay plaintiffs' medical bills despite the fact that many of them were covered by the health insurance policies.

26. Plaintiffs were both damaged by the defendants' failure to promptly investigate and pay Mr. Shaffer's medical bills because Mrs. Shaffer was an insured under the policies, because she was just as affected by the economic hardship caused by the defendants' failure to pay both her medical bills and those of Mr. Shaffer, and because she is also personally liable under West Virginia law for many of the medical bills of herself and her husband.

27. Plaintiffs incurred large medical bills in connection with Mr. Shaffer's treatment for cancer. Defendants provided notice that they needed more information to resolve those claims by EOB dated January 5, 2017. Subsequently, Mrs. Shaffer made every attempt to comply with the requests for more information. Yet, defendants have yet to pay those claims to date and have equally failed to explain exactly why they have been unable and/or unwilling to do so.

28. Defendants continue to send letters claiming that they have requested more information from the providers as recently as September 2017 regarding bills that date back to May 2016 and that, on information and belief, were submitted to defendants long ago.

29. As a direct and proximate result of the defendants' failure to pay Mr. Shaffer's medical bills that were covered by the health insurance policies, the various medical providers have made collection demands upon plaintiffs and plaintiffs have had to make payment arrangements with their medical providers to cover bills that should have been paid by the defendants. Moreover, they have done so at a time when plaintiffs' income has substantially decreased as a result of the termination of Mr. Shaffer's coal mine employment.

30. Given their economic difficulties, both Mr. and Mrs. Shaffer suffered substantial and severe distress as a direct and proximate result of the defendants' refusal to honor their obligations to plaintiffs under the health insurance policies.

31. On information and belief, Meritain has, at all times relevant herein, acted as the administrator of and agent for the health insurance policies that plaintiffs purchased from National.

32. Plaintiffs were, at all time relevant herein, insured under the health insurance policies issued by National and administered by Meritain.

33. Meritain, as its administrator, knew, understood, implemented and condoned the misconduct of National in failing to pay the plaintiffs' medical providers for many of the services they rendered to the plaintiffs even though it was well aware of the fact that it was delaying and/or denying payment for services covered by the health insurance policies.

34. Meritain is, on information and belief, liable for the misconduct alleged herein because it aided and abetted and/or conspired with National to deprive plaintiffs of the benefits due to them under the health insurance policies.

35. The delay in paying plaintiffs' medical bills during the period covered by the policies has caused and continues to cause damage and hardship to plaintiffs.

36. Plaintiffs, by counsel, wrote to National and Meritain on September 7, 2017 and requested the identity of the person with whom he should speak regarding the status of the denials of the plaintiffs' claims. Plaintiffs, by counsel, wrote defendants again on September 13, 2017. The letter of September 13, 2017 was sent to Meritain by facsimile and specifically requested:

   a. The additional information that the defendants needed to process the outstanding health insurance claims;
   b. Copies of documents which memorialized the defendants' communications with the plaintiffs and their medical providers;
   c. Copies of any internal rule, guideline or protocol that defendants relied upon in processing the plaintiffs' claims; and

6

   d. The person and his/her contact information with whom counsel should communicate about the matter.

  37. Late on the afternoon of September 13, 2017, Meritain responded to the letter of September 7, 2017, by facsimile stating that it was the plan administrator for National and that National would respond to my requests.

  38. A Meritain representative also phoned plaintiffs' counsel confirming that National would respond to counsel's letters. However, neither National nor Meritain ever provided responses to the specific requests.

  39. Subsequently, on or about October 11, 2017, Meritain sent additional letters indicating that they were reviewing claims and would issue decisions within thirty days. However, the new letters included claims that were already submitted for payment by medical providers in the past, were the subject of prior letters from the defendants to the plaintiffs which also promised decisions within thirty days, and, nonetheless, the medical bills were never paid by the defendants.

  40. The manner in which the plaintiffs have been treated with continual delays and/or denials in the payment of medical bills covered by the health insurance policies is part of a pattern and practice of the defendants designed to delay or deny valid health insurance in this and, on information and belief, in other cases.

  41. The delay in payment of the medical insurance claims has already caused the plaintiffs to suffer injury and damages beyond the amount of individual insurance claims.

  42. Plaintiffs are not required to exhaust internal policy remedies, but even if there is a exhaustion requirement, it should be waived due to the hardship to plaintiffs for any further delay in resolving the issues raised in this Complaint and further, in light of the defendants' pattern and

7

practice of delaying payment for medical bills and/or refusing to pay medical bills covered by the health insurance policies.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

43. The health insurance policies are a contract between the plaintiffs and one or both defendants.

44. Defendants were obligated under the terms of the health insurance contract to pay for those medical and related costs incurred by plaintiffs and covered by the health insurance policies.

45. Defendants breached their duty under that health insurance contract by failing to pay for medical and related costs that were covered by the health insurance policies or even, in many cases, to provide clear statements of the documentation that the plaintiffs allegedly failed to provide.

46. As a direct and proximate result of the defendants' failure to honor their duty under the health insurance policies, plaintiffs were damaged by an amount equal to the amount that should have been paid to plaintiffs and/or their medical providers under the health insurance policies. Although not all bills are covered, Mr. Shaffer's bills related to his cancer exceed the deductibles and co-pays and should be paid in substantial part. Defendants owe to plaintiffs the amounts of unpaid insurance benefits proven to the jury.

## SECOND CAUSE OF ACTION
### (Unfair Trade Practices Act Common Law Bad Faith)

47. At all times relevant hereto, defendants were subject to the laws of West Virginia, both the common law and those certain statutory and regulatory laws regarding the appropriate and lawful conduct of the business of insurance including, but not limited to, the UTPA.

48. Defendants had legal obligations under the UTPA and under their common law duty of good faith to the Shaffers to make a prompt and full investigation of the plaintiffs' claims and to effectuate a prompt, fair and equitable settlement of the claims, because coverage and liability for many of Mr. Shaffer's medical bills were clear in this case.

49. By their acts, omissions and failures to act, the defendants violated their duty of good faith and fair dealing to the plaintiffs.

50. By their acts, omissions and failures to act, defendants failed to conduct a proper investigation under the law or to effectuate a prompt, fair and equitable settlement offer in this case.

51. Defendants knew or should have known that their conduct, actions and failures to act and other wrongful conduct as alleged herein or as may become known as this matter proceeds was malicious and would cause the plaintiffs to sustain and endure economic and emotional harm and distress by depriving them of a prompt, fair and reasonable payment of many of their medical bills under the insurance coverage that the plaintiffs had purchased from the defendants.

52. The acts and conduct, both omissions and commissions, of the defendants constitute violations of the duties owed by them to the their insured under the West Virginia regulatory and statutory provisions regarding insurance claims handling and settlement practices, including W. Va. Code § 33-11-4(9), and the common law regarding first-party insurance bad faith, which violations in this case by defendants include, but are not limited to, the following:

   a. Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue. W. Va. Code § 33-11-4(9)(a);

   b. Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies. W. Va. Code § 33-11-4(9)(b);

   c. Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies. W. Va. Code § 33-11-4(9)(c);

d. Refusing to pay claims without conducting a reasonable investigation based upon all available information. W. Va. Code § 33-11-4(9)(d);

e. Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed. W. Va. Code § 33-11-4(9)(e);

f. Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear. W. Va. Code § 33-11-4(9)(f);

g. Delaying the investigation or payment of claims by requiring an insured, claimant, or the physician of either to submit a preliminary claim report and then requiring the subsequent submission of formal proof of loss forms, both of which submissions contain substantially the same information. W. Va. Code § 33-11-4(9)(l);

h. Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement. W. Va. Code § 33-11-4(9)(n);

i. Failing to notify the first party claimant and the provider(s) of services covered under accident and sickness insurance and hospital and medical service corporation insurance policies whether the claim has been accepted or denied and if denied, the reasons therefor, within fifteen calendar days from the filing of the proof of loss W. Va. Code § 33-11-4(9)(o);

j. Other such violations that may become known as this matter progresses; and, in addition,

k. Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts which will ultimately be recovered in actions brought by the insureds, when the insureds have made claims for amounts reasonably similar to the amounts ultimately recovered. W. Va. Code § 33-11-4(9)(g).

53. Defendants have performed such unlawful conduct in this case, and, upon information and belief, in other cases, with such frequency as to indicate a general business practice by failing to promptly investigate and resolve such claims when liability is reasonably clear.

54. This general business practice is evident from defendants' repeated issuance of EOBs and letters claiming that Meritain and National needed more information about the claim when, in fact, defendants knew they had sufficient information to pay many, if not all, of the claims.

55. Moreover, the defendants unlawful general business practice is also evident from the fact that defendants advised the plaintiffs in this case and, on information and belief, advised other persons whom they insured, that more information was necessary without saying what information was actually needed and without making a decision once that additional information was provided, thereby delaying and/or avoiding payment of benefits due under the health insurance policies.

56. In addition to the above conduct, the defendants may have committed other conduct in violation of the laws of this State, both common and statutory, not yet known or identified that may become known or identified as this matter progresses.

57. As a direct and proximate result of the defendants' violation of the UTPA and of the defendants' first-party bad faith in failing to honor their obligations under the health insurance policies and under West Virginia law, the plaintiffs suffered damages equal to the amount of the unpaid medical bills and, in addition, suffered -- throughout their dealings with the defendants -- substantial stress, anguish, aggravation, inconvenience and emotional distress occasioned by their inability to pay their medical bills entitling plaintiffs to damages in an amount to be determined by the jury.

58. As a direct and proximate result of the defendants' violation of the UTPA and of the defendants' bad faith in failing to honor their obligations under the health insurance policies and under West Virginia law, plaintiffs are entitled to their attorney fees and costs in pursuing this matter.

59. Defendants acted with actual malice as they knew that many of the Shaffers' health insurance claims were proper, but willfully, maliciously and intentionally failed to pay those claims and willfully, maliciously and intentionally engaged in unfair business practices in failing to pay those valid claims.

60. The damages suffered by plaintiffs were the result of conduct that was carried out by the defendants with actual malice toward plaintiffs and/or with a conscious, reckless and outrageous indifference to the health, safety and welfare of others entitling plaintiffs to punitive damages in an amount to be determined by the jury consistent with W. Va. Code § 55-7-29.

## THIRD CAUSE OF ACTION
### (Conspiracy/Aiding and Abetting)

61. Defendants Meritain and National combined to engage in concerted action to accomplish an unlawful purpose, the denial of meritorious health insurance claims of the plaintiffs.

62. Meritain and National aided and abetted each other in denying the plaintiffs' meritorious health insurance claims.

63. Even if either defendant contends that it was not responsible for denying and/or delaying payment of plaintiffs' health insurance claims, it is nonetheless liable for the damages suffered by the plaintiffs as an aider and abettor of the other and/or as a party who shared a common plan with the other defendant to delay and deny meritorious health insurance claims.

64. Defendants are therefore liable for compensatory and punitive damages as well as attorney fees and costs for damages as set forth in paragraphs 55 through 60 above which are incorporated by reference herein.

**WHEREFORE**, the plaintiffs demands relief from the defendants as follows:

(a) Compensatory damages, past and future, including, but not limited to, the amount that defendants should have paid to plaintiffs and/or their medical providers under the health insurance policies and such other compensatory damages as may become known as this matter matures;

(b) Recovery of all allowable damages under *Hayseeds v. State Farm Fire and Casualty Company*, and its progeny, including but not limited to: all attorneys' fees and costs, all expenses caused by the defendants' failure to pay Mr. Shaffer's claims, and damages for aggravation and inconvenience and emotional distress; all in amounts to be determined by the jury upon proper proof presented at trial;

(c) Exemplary damages under the Second and Third Causes of action in an amount to be determined by a jury upon proper proof presented at trial;

(d) Costs, expenses and attorneys' fees;

(e) Pre-judgment and post-judgment interest; and

(f) Such other general and specific relief as may be shown by the evidence in this case.

**PLAINTIFFS SEEK A JURY TRIAL ON ALL ISSUES CONTAINED HEREIN.**

Respectfully submitted,
Plaintiffs,
By Counsel

*/s/ C. N. Karl*

ALLAN N. KARLIN, WV BAR # 1953
JANE E. PEAK, WV BAR # 7213
ALLAN N. KARLIN & ASSOCIATES
174 CHANCERY ROW
MORGANTOWN, WV 26505
304-296-8266