# EXHIBIT B

## MERITAIN HEALTH, INC.

## ADMINISTRATIVE SERVICES AGREEMENT

This Administrative Services Agreement ("Agreement"), effective as of **January 1, 2014** (the "Effective Date"), is by and between **Meritain Health, Inc.,** (defined to include Meritain Health, Inc. and any of its affiliates and entities that they acquire) having its principal office at 300 Corporate Parkway, Amherst, New York 14226 ("Meritain") and **National General Management Corporation** ("Client") having its principal office at 59 Maiden Lane, 38th floor, New York, NY 10038. In consideration of the mutual covenants, conditions and promises set forth herein, Client and Meritain agree as follows:

## ARTICLE I.  DEFINITIONS

For the purposes of this Agreement, terms capitalized other than for grammatical convention and not otherwise defined with the body of this Agreement will have the meaning set forth below.

1.1     **Applicable Law** means all applicable laws and regulations that govern each Party.

1.2     **Claim** means a request by a Claimant for payment or reimbursement for Covered Services.

1.3     **Claimant** means any person or entity submitting expenses for payment or reimbursement.

1.4     **Claims Payment Account** means an account established, owned and funded by the Client for payment or reimbursement of Covered Services.

1.5     **Covered Services** means the care, treatments, services or supplies eligible for payment or reimbursement under the terms of a Policy (defined below).

1.6     **HIPAA** means the Health Insurance Portability and Accountability Act of 1996, and the regulations issued thereunder, as amended.

1.7     **Participant** means any person who is eligible, properly enrolled and entitled to benefits under a Policy.

1.8     **Policy** means the rules, regulations, procedures, directives, guidelines, instrument or instruments, and filed policy, setting forth and governing the duties of the Client, as the designated administrator, as well as the eligibility and benefit provisions of a Policy which provide for the payment or reimbursement of Covered Services.

1.9     **Provider** means a preferred provider network, physician, dentist, hospital, laboratory or other medical practitioner, or medical care facility, or a vendor of supplies or services, who or which is authorized to receive payment or reimbursement for Covered Services under the terms of a Policy.

## ARTICLE II.  TERM; TERMINATION

2.1     The term of this Agreement shall begin as of the Effective Date as set forth above and shall continue to and include December 31, 2017 (the "Term"), unless sooner terminated pursuant to the provisions of this Agreement.  Unless either party provides the other with at least ninety (90) days written notice prior to the end of the then-current Term, the Term shall automatically renew for successive twelve (12) month terms, provided that Meritain reserves the right to increase the fees payable by Client for such renewal Term to a mutually agreed upon rate.  In the event the parties fail to agree upon new rates for fees, the existing fees for the prior Term, plus a percentage amount equal to the change in the Consumer Price Index for all Urban Areas for the previous 12 months, shall apply for each renewal Term.

2.2     Meritain's obligations under this Agreement apply only to Claims for Policy benefits that are incurred on or after the Effective Date and prior to the date this Agreement terminates or expires in accordance with its terms.

2.3     In addition to the expiration or non-renewal provisions of this Agreement, this Agreement will terminate: (a) at the discretion of Meritain, after expiration of five (5) business days' from written notice to Client for Client's failure to pay fees or amounts due under this Agreement; (b) at the discretion of Meritain, after expiration of five (5) business days from written notice  to Client based upon Client's failure to provide funds necessary or required to adequately fund the Claims Payment Account or to otherwise pay for benefits or Covered Services under a Policy; (c) at the discretion of Meritain, upon written notice from Meritain based upon Client's failure to promptly sign and deliver any information or data necessary for Meritain's performance of the Services under this Agreement; or (d) in the event either party materially breaches a term, provision or warranty of this Agreement or defaults (other than for the foregoing reasons and those set forth in Section 2.4 below), and does not correct the breach to the non-breaching party's reasonable satisfaction within thirty (30) days after receipt of written notice of breach from the non-breaching party. If Meritain fails to receive fees by the due date thereof, Meritain may, in addition to other remedies under this Agreement, and at law or in equity, suspend performance of any or all of Meritain's obligations under or in connection with this Agreement.  Meritain agrees to provide Client two business (2) day's prior written notice before suspending services.

2.4     In addition to the above, the occurrence of any <u>one</u> of the following events shall constitute a default under this Agreement, and the party not in default may, at its option, terminate this Agreement upon written notice to the other party:

2.4.1     Thirty (30) days after either party (a) becomes insolvent, (b) is unable to pay its debts as they become due, (c) states in writing that it is not able to pay its debts as they become due, (d) makes an assignment for the benefit of its creditors, (e) files, or has filed against it, any proceeding in the United States Bankruptcy Court, and is not resolved within sixty (60) days of such filing, (f) is subject to a levy, seizure or sale of a substantial part of its property or assets on behalf of creditors, or (g) is subject to the appointment of a receiver for a period equal to or greater than thirty (30) days.

2.4.2     Upon either party being dissolved, terminated or ceasing to exist according to Applicable law.

2.5     Upon expiration or termination of this Agreement:

2.5.1     because the Services include access to provider networks owned or arranged for by Meritain, Client agrees to engage Meritain for a period of twelve (12) months following the date of expiration or termination of this Agreement to administer all Claims incurred prior to such date, and the Client agrees to tender to Meritain immediately available funds in an amount equal to twenty-five percent (25%) of savings, to be paid to Meritain as set forth on a monthly invoice. In addition to Meritain's run-out administration fees, Meritain will also bill the Client any applicable PPO access, integration or run-out fees due for claims processed during the run-out period; and

2.5.2     unless within sixty (60) days thereof the Client sends Meritain a written request to receive all cases in the Meritain subrogation process, Meritain shall continue subrogation and recovery efforts on all such cases and agrees to remit to the Client all proceeds it receives, minus the subrogation fees set

2

forth in Exhibit A hereof.  In the event the Client requests to receive subrogation cases from Meritain, it agrees to release Meritain and its subrogation vendor from and against any and all suits, claims, losses, fees and expenses related to the subrogation cases and to reimburse Meritain for all out-of-pocket costs and expenses.

Notwithstanding the expiration or termination date of this Agreement, this Section 2.5 shall be deemed to survive for the purpose of effectuating this Section.

2.6    Any party not in breach of this Agreement shall be entitled to exercise any remedy to which it is entitled at law or in equity and to enforce its rights under this Agreement, including without limitation, enforcement through specific performance, injunctive relief and the recovery of all costs arising from any litigation or arbitration including, but not limited to, reasonable attorneys' fees.

2.7    In the event Client is in default of paying any fees or expenses under this Agreement, Meritain shall have the right to set-off such amounts against any monies due Client under this Agreement, including without limitation, subrogation recoveries.

## ARTICLE III.  MERITAIN'S RESPONSIBILITIES

Meritain agrees to provide the administrative services set forth in this Article III, and as more fully described in Exhibit A and Client agrees to pay to Meritain the fees set forth in Exhibit A.  Throughout the Term, Meritain shall:

3.1    Receive, on behalf of the Client, Claims data and documentation from Participants and Providers.

3.2    Process Claims submitted by Participants and Providers in accordance with the applicable Policy. Steps include:

a.    Investigate, pay, settle, or deny all Claims in accordance with the terms of the applicable Policy, Applicable Law, and Claim guidelines provided to Meritain; and

b.    Maintain an accurate and complete Claim file for each reported Claim in accordance with industry standards and practices; any written instructions, policies, or procedures provided by Client and every applicable code, statute, law, rule, and regulation; and

c.    Provide Client, upon request, a clear synopsis of the facts of any Claim; and

d.    Use Client provided or approved forms for the administration of Claims;

e    Process claims in accordance with service standards as attached(Service Level Agreement).

3.3  Provide Customer service in support of Policy:.

a.  Maintain Service Levels as outlined in Schedule I to this Agreement. The parties acknowledge and agree that failure to meet one or more Service Levels shall not be deemed to be a material breach of the Agreement, and Client's sole remedy for any such failure shall be the remedies set forth in Schedule I.

b.  Provide a toll free customer service line with live assistance accessible to Participants Monday through Friday between the hours of 9:00 a.m. to 7:00 p.m. Eastern Standard Time, except for Meritain company holidays..

c.  Answer questions from Participants in accordance with the terms of the Policies and procedures as communicated by Client, subject to Section 3.3 hereof.

d.    Prepare and transmit to Client, management reports containing such information as reasonably requested by Client to properly monitor customer service. Any additional programming costs

arising from Client's request of a customized or otherwise non-standard report shall be borne by the Client.

3.3     Refer to the Client, for its exclusive and final resolution, any questions concerning the meaning of any part of a Policy, or the validity of any questionable or disputed Claims.

3.4     Refer to the Client, for its exclusive and final resolution, any appeals from any denial of any of the Claims, pursuant to Applicable Law.

3.5     Respond to any reasonable request by the Client for information regarding any of the Claims.

3.6     Process, issue and distribute checks from the Claims Payment Account, as instructed by the Client, to Participants, Providers or others as may be applicable.

3.7     Offer the use of one or more Preferred Provider Organizations or other provider discount arrangements (collectively "PPOs") as a Covered Service under this Agreement.  The Client acknowledges that the decision to use a PPO and which PPO(s) to use is at the sole discretion of the Client.  In addition, Meritain makes no representations regarding the value or cost effectiveness of any PPO adopted by the Client.  The Client also acknowledges that each PPO it selects, and not Meritain, is responsible for its own provider credentialing, contracting with providers, recruiting, licensing, accreditation, maintaining adequate staffing, practice and professional standards and all other activities pertinent to the responsibilities accorded PPOs.

3.8     Prepare for the Client a monthly written accounting stating: (a) funding provided by the Client; (b) the name of each Participant or Provider that made a Claim; (c) the value of each of the Claims made; (d) the value of each of the Claims satisfied; and (e) the total value of all of the Claims satisfied.

3.9     Prepare for the Client Meritain's standard claim and statistical reports as reasonably requested.

3.10    Deliver to the Client copies of Meritain's electronic files respecting the Claims within thirty (30) days of the termination of this Agreement, subject to both (a) the payment by the Client of all monies due Meritain, and (b) the Client's pre-payment of all packaging and delivery expenses.

3.11    Provide to the Internal Revenue Service an annual report of tax reportable claim payments made to medical care Providers.

3.12    Maintain adequate records of claims made and benefits paid in such form and format as may be convenient for Meritain for a period of six (6) years or longer if required by Applicable Law.

3.13    Advise the Client as to all matters actually known to Meritain involving threatened or actual legal actions involving a Policy and/or the Client.

3.14    If it is subsequently determined that any payment has been made to or on behalf of an ineligible Participant, or that any payment made was incorrect as to amount, Meritain will promptly correct underpayments and use reasonable efforts to recover overpayments for Claims processed by Meritain.  In no event shall Meritain be required to initiate court proceedings for any such recovery.

3.15    Provide additional services not specified in this Agreement, as mutually agreed upon in writing by the Client and Meritain.

3.16    Prepare and send explanation of benefits forms ("EOB") as required by Applicable Law, which will provide an explanation of the adjudication of the Claim or reason(s) for the denial of benefits.

3.17    Provide reasonable assistance to the Client in pursuing rights of recovery arising from coordination of benefits, bill negotiation, discount programs, cost management, and fraud detection.  Such services are subject to those fees set forth in Exhibit A.

3.18 Maintain E&O coverage equal to or greater than $1,000,000 per Claim, $3,000,000 aggregate.

## ARTICLE IV.  THE CLIENT'S RESPONSIBILITIES

The Client shall perform the following during the Term:

4.1     Maintain and furnish to Meritain current, accurate eligibility and coverage information, and submit to Meritain written notice respective the status of any of the Participants within fifteen (15) days after the Client becomes aware of any such change.  Such information shall be provided in a format reasonably acceptable to Meritain and shall include the following with respect to each Participant:  name and address, social security number, date of birth, type of coverage, sex, relationship to employee, changes in coverage, date coverage begins or ends, and any other information necessary to determine eligibility and coverage levels under the Policies.

4.2     Resolve all ambiguities and disputes relating to any Policy eligibility of a Participant, Policy coverage, denial of Claims and decisions regarding appeals of denials of Claims, as well as any other Policy interpretation questions.

4.3     Establish a Claims Payment Account, and execute and deliver to Meritain and to a mutually agreed-upon depository, any and all documents necessary to empower Meritain to act as a signatory on such account.

4.4     Provide Meritain with at least forty-five (45) days prior written notice of minor changes to the Policies and/or other written procedures, unless a shorter time is necessary due to Applicable Law.  Meritain reserves the right to increase fees for any changes which result in additional cost or expense to Meritain.

4.5     Provide and timely distribute all notices, information, materials and documents required to be given to Participants under Applicable Laws, and maintain all recordkeeping, and file all forms relative to the Policies, as required under Applicable Laws.  In addition, Client shall timely prepare or cause to be prepared, and timely execute, any documents, forms or contracts respecting the Policies that are required by Applicable Laws.

4.6     Pay any and all taxes, licenses and fees levied, if any, by any local, state or federal authority in connection with the Policies.

4.7     Forward to Meritain, by the due date, those fees for services rendered under this Agreement as set forth in Exhibit A hereof.

4.8     Deposit into the Claims Payment Account, within 48 hours of the Client's receipt of a funding request, all monies required for the satisfaction of Claims, which expenses shall be borne solely by the Client.  Meritain will not be responsible for any consequences resulting from Client's untimely funding of Claims.  Client further agrees that upon request by Meritain, it will fund claims within 24 hours as may be necessary for reasons including without limitation meeting funding deadlines for provider discounts.  Client acknowledges and agrees that if it fails to fund claims in a timely manner as requested, such failure may result in lost discounts from providers, and/or interest and penalties, all of which may require Client to fund such additional sums.

4.9     Forward to Meritain, by the due date, all monies that Meritain requests for expenses incurred to print materials for the Client, to obtain medical records or to investigate Claims, or for any pre-approved expenses incurred for professional services rendered to or on behalf of the Client in connection with Meritain's obligations under this Agreement, which expenses shall be borne solely by the Client.

4.10     Safeguard the privacy and confidentiality of individually identifiable health information regarding Participants ("Protected Health Information") as defined under HIPAA.  Client shall adopt policies and procedures to ensure that it will not use and/or disclose Protected Health Information except as permitted or required by Applicable Law.  Client must establish firewalls to ensure that Protected Health Information is not used or disclosed by an employee who does not need to access such information for purposes of Policy administration, and to provide Meritain a signed certification indicating its compliance with these requirements.  Client will not request Meritain to disclose Protected Health Information except as consistent with Applicable Law.  Client will obtain the proper consents and authorizations for Meritain to disclose Protected Health Information if Meritain is

directed by the Client to disclose such information.  The parties have executed the HIPAA Business Associate Agreement, attached hereto as Exhibit B, authorizing Meritain to act as a business associate of the Client.

4.11    Comply with all Applicable Law with respect to the Policies. Client shall provide and timely distribute all notices, information, materials and documents required to be given to Participants under Applicable Laws, and maintain all recordkeeping, and file all forms relative to the Policies, as required under Applicable Laws. In addition, Client shall timely prepare or cause to be prepared, and timely execute, any documents, forms or contracts respecting the Policies that are required by Applicable Laws.

4.12    Comply with the requirements for accessing the selected PPO.

## ARTICLE V.    ACKNOWLEDGEMENTS AND REPRESENTATIONS

Each of the parties expressly acknowledges and represents to the other party as follows:

5.1    By entering into this Agreement, the Client is delegating to Meritain only those powers and responsibilities specifically enumerated herein.  Any function not specifically delegated to and assumed by Meritain pursuant to this Agreement shall remain the sole responsibility of the Client.

5.2    The parties have entered into this Agreement as independent contractors and not as agents of one another.  Neither party shall have any authority to act in any way as the representative of the other, or to bind the other to any third party, except as specifically set forth herein.

5.3    The parties mutually represent and warrant to one another that:  (a) no further corporate approval from either of the parties is necessary for this Agreement to be effective; (b) each of the parties has the legal power, authority and right to enter into, and perform its respective obligations under, this Agreement, and (c) each party's execution of, delivery of and performance under this Agreement shall not constitute a violation of any oral or written agreement to which it is a party or by which it is bound.

5.4    With respect to the satisfaction of Claims or other obligations arising under a Policy, Meritain shall not be obligated to disburse more than the amount made available by the Client for disbursement from the Claims Payment Account.

5.5    Meritain shall not, under any circumstance, be responsible to use its corporate assets to satisfy any Claim or expense that is the responsibility of the Client or any Participant.

5.6    This Agreement shall not be deemed a contract of insurance under any Applicable Laws. Meritain does not insure, guarantee or underwrite the liability of the Client related to any Policy, or for any other reason.  The Client, and not Meritain, shall remain solely liable for the payment of Claims and all other expenses incidental to any Policy.

5.7    Meritain owes a duty of care only to the Client, which duty is one of reasonable care under the attendant circumstances.  Meritain is not liable for any mistake of judgment or for any action taken in good faith.

5.8    Meritain shall not be liable for any payments, underpayments, fines, penalties, interest or other charges assessed by any governmental or regulatory agency, in connection with any Policy.  The Client shall remain solely liable for any such payments, underpayments, fines, penalties, interest or other charges so assessed, and shall indemnify Meritain in the event same are assessed against Meritain.

5.9    The Client shall at all times retain full discretionary control, authority and responsibility with respect to the administration of the Policies. The Client agrees that Meritain's role will be limited to that of a provider of the non-fiduciary services specified under this Agreement, that the services rendered by Meritain under this Agreement will not include the power to exercise discretionary authority over Policy administration or Client assets (if any).  Meritain's services under this Agreement are intended to and will consist only of those "ministerial functions" described in 29 C.F.R. 2509.75-8, D-2 and will be performed within the framework of policies and interpretations established by the Client.  The Client is solely responsible for the design of the Policies.

5.10     Meritain shall provide the services based on the written rules, regulations, procedures, directives and guidelines provided to Meritain and in accordance the requirements of the Policies. The Client shall notify Meritain in writing of all State laws and regulations that would govern the performance of the Services.

5.11     The Client represents and warrants to Meritain that the Policies are fully-compliant with, and shall at all times during the Term remain in full compliance, with Applicable Laws.

5.12     The work to be performed by Meritain under this Agreement may, at Meritain's discretion, be performed directly by it or wholly or in part through a subsidiary or affiliate of Meritain, or by another organization, agent, advisor or other person(s) with which Meritain has an arrangement provided that Meritain shall be liable for the acts or omissions of the party performing the work.

5.13     Meritain shall be entitled to rely, without investigation or inquiry, upon any written or oral information or communication of the Client or its agents.

5.14     In the event that the Centers for Medicare and Medicaid Services ("CMS") determines that a Claim has been underpaid under Medicare Secondary Payor laws, the parties acknowledge that funds from the Claims Payment Account will be used to correct such underpayment. Under no circumstances will Meritain be required to make such payment with Meritain funds, regardless of when CMS requires such payment, during or after the term of this Agreement, provided that such underpayment is not due to Meritain's gross negligence, bad faith, or willful misconduct. This provision shall survive the expiration or termination of this Agreement.

5.15     The Client agrees and acknowledges that Meritain is not liable for any act or omission by any Provider or for a Provider's failure or refusal to provide services or supplies. Care and treatment received by Participants are subject to the rules and regulations of the Providers.

5.16     The Client agrees and acknowledges that Meritain and its employees shall not be liable, under any circumstances, for the action or lack thereof by any Provider under theories of vicarious liability, agency, ostensible authority, respondeat superior, imputed liability, or any other theory of liability.

5.17     Neither party shall be liable to the other or a Participant for any indirect, consequential, special, exemplary or punitive damages, or for lost profits, loss of use, cost of procurement of substitute services or any similar claim or demand, however caused and on any theory of liability.

## ARTICLE VI. MISCELLANEOUS

6.1     _Exclusivity._     Client agrees that, during the term of this Agreement, Meritain shall be the sole and exclusive provider to Client of each of the products and services described in this Agreement.

6.2     _Audit Rights._     Subject to the provisions of this Section, Client may audit Meritain's records in connection with the administration of this Agreement no more frequently than once every 12 months and Meritain agrees to provide Client with reasonable and timely access to such records. Meritain shall only be required to provide access to such information that is in its possession and which is reasonably necessary to provide Services with respect to the Policies, provided that disclosure of such information is not prohibited by Meritain's agreements with third parties or any requirement of Applicable Law. Client shall give Meritain reasonable prior written notice which shall include: a) a statement of its intent to perform such an audit; b) a statement explaining its need to perform the audit; c) a description of the type(s) of information within the scope of the audit, including dates; and d) Client's representation that the information to be disclosed by Meritain is reasonably necessary for the administration of the Policies. All audits and information disclosures shall occur at a reasonable time and place, in a manner that does not unreasonably interfere with Meritain's ability to conduct its normal business, and at Client's sole cost and expense. Subject to Meritain's approval, which shall not be unreasonably withheld, Client may designate a third party to conduct an audit or receive information hereunder. Upon receipt of such approval by Meritain, the Client and such third party shall enter into an agreement with Meritain which shall provide at a minimum: (i) a representation from Client and such third party that no portion of the audit is based upon a contingency fee arrangement; (ii) a representation from Client and such third party that each shall only use the minimally necessary amount of audit information solely for purposes of administering the Policies and that

each shall protect and maintain such information as confidential and to not disclose the information to any other person or entity other than Meritain; and (iii) a representation from Client and such third party that each shall provide Meritain with copies of all reports and summaries compiled as a result of the audit.

6.3    Full Integration.  This Agreement, together with all exhibits and schedules that are attached hereto, supersedes any and all prior representations, conditions, warranties, understandings, proposals or other agreements between the Client and Meritain, whether oral or written, respecting the subject matter hereof.  In this regard, the parties, having read and understood this entire Agreement, acknowledge and agree that there are no other representations, conditions, promises, agreements, understandings or warranties that exist outside this Agreement which have been made by either of the parties hereto, which have induced either party or has led to the execution of this Agreement by either party.  Any statements, proposals, representations, conditions, warranties, understandings or agreements which may have been heretofore made by either of the parties, and which are not expressly contained herein, are void and of no force or effect.

6.4    Use of Trade Names.  Client acknowledges that Meritain may do business under the names of any subsidiary, affiliate or service line, including without limitation: Meritain Health, Inc., PERFORMAX, Inc. and/or any combination or derivative of the foregoing.  Client hereby waives any right to assert any failure by Meritain and/or any of its affiliates or subsidiaries to register any particular trade name as a defense to, or in avoidance of, any claim or counterclaim made by Meritain and/or its affiliates or subsidiaries against Client arising out of or in connection with the Agreement.

6.5    Intellectual Property.  To the extent directed by Client, Meritain shall perform its duties under this Agreement in the name of Client.  Client hereby grants to Meritain, concurrent with the Term, a license to use the name, trademark, service marks, logos, and other identifying marks of Client, or its relevant subsidiary, solely for use in the performance of Meritain's duties hereunder.

6.6    Confidentiality.  In performing its obligations pursuant to this Agreement, each Party may have access and receive certain non-public information about the other and its affiliates including, not limited to, member/insured information, claims processing procedures and systems, product marketing philosophy, telemarketing design and service, product advantages and disadvantages, financial, demographic and actuarial information, eligibility guidelines, internal policies concerning enrollment, billing and other information and/or proprietary materials which are considered confidential or proprietary to the disclosing Party. This Section is not intended to grant the Parties rights to confidential information, but to circumscribe the use that the Parties may make of any information to which they have access.  This information shall not be disclosed to entities or persons not a Party to this Agreement unless such disclosure is (i) required by law, (ii) necessary for the fulfillment of the receiving Party's obligations under this Agreement, (iii) otherwise authorized by the disclosing Party.    Each Party hereto agrees to and shall maintain the confidentiality of all such confidential and/or proprietary information and shall not use such confidential and/or proprietary information for any reason other than the fulfillment of its obligations hereunder, for the term of the Agreement and thereafter.   Each Party shall retain all ownership rights to its confidential and/or proprietary information.  Upon termination of this Agreement, each Party  agrees to return all copies of proprietary data confidential material in its possession or control or to destroy same, as requested by the other party  Each party agrees to bear the reasonable costs for the return or destruction of its confidential material.

6.7    Counterparts.  This Agreement may be executed in two or more counterparts, each and all of which shall be deemed an original and all of which, together, shall constitute one and the same instrument.

6.8    No Oral Modification.  No provision of this Agreement may be amended, augmented or in any way modified except in a writing signed by a duly authorized representative of each of the parties.

6.9    Indemnification.  The Client shall indemnify, defend (with counsel mutually agreed upon by the parties), save and hold Meritain and its affiliates, and their officers, directors, employees and agents harmless from and against any and all claims, suits, actions, liabilities, losses, fines, penalties, damages and expenses of any kind (including, but not limited to, reasonable attorneys' fees) which Meritain may incur by reason of: (i) Client's or its employees' or agents' failure to perform or abide by any of its duties under this Agreement; (ii) Client's failure to administer the Policies in a prudent and proper manner; (iii) any negligence or misconduct on the part of the Client or its agents or representatives; (iv) any disputes arising out of partial payment or denial of a Claim by either the Client or any excess risk carrier; (v) any action taken by Meritain at the direction of the Client;

(vi) Meritain's inability to comply with PPO prompt pay discounts due to circumstances beyond its control such as, additional information needed from the Client, any Participant, any Provider or other third party, incomplete claim, eligibility or coverage information, untimely repricing from the vendor, or Client's failure to fund claims in a timely manner; or (vii) the Client's violation of any of the acknowledgements, warranties or representations made by the Client contained herein.

Meritain shall indemnify, defend (with counsel mutually agreed upon by the parties), save and hold the Client harmless from and against any and all third party claims, suits, actions, liabilities, losses, fines, penalties, damages and expenses of any kind (including, but not limited to, reasonable attorneys' fees) which Client may incur by reason of: (i) Meritain's gross negligence, willful failure to act or willful misconduct in the performance of its duties under the Agreement; (ii) Meritain's fraud or embezzlement or other financial willful misconduct related to the Agreement; or (iii) Meritain's violation of any of the express warranties of Meritain contained herein; provided, however that Meritain's cumulative liability arising in connection with the performance of services under this Agreement shall not exceed ████████████████████████████████████████████████. In such case, the cumulative liability shall not exceed amount of fees payable by Client to Meritain under the Agreement for the specific Services giving rise to the claim. Client acknowledges and agrees that Meritain shall not be liable for any mistake of judgment or for any action taken in good faith, and that any clerical error made by Meritain in the performance of its duties under this Agreement will not be construed as negligence or gross negligence provided that Meritain makes a good faith attempt to correct any such error once it is discovered.

6.10   <u>Severability</u>.  In the event any provision of this Agreement is held to be invalid, illegal or unenforceable for any reason or in any respect, such invalidity, illegality or unenforceability shall in no event affect, prejudice or disturb the validity of the remainder of this Agreement, which shall be in full force and effect, enforceable in accordance with its terms.

6.12   <u>Applicable Law/Venue</u>.  This Agreement shall be construed and enforced in accordance with the laws of the State of New York without reference to its principles of conflicts of laws.

6.13   <u>Dispute Resolution; Arbitration</u>.  In the event of a dispute by either party related to this Agreement, the parties agree to first attempt to resolve such dispute by having the parties' Chief Executive Officers (or their designees) meet in person within thirty days of written notice of dispute issued by either party.  In the event the dispute is not resolved after reasonable efforts by the Chief Executive Officers within such thirty day period, either party may then proceed to arbitration under this Section. All disputes, controversies or claims arising out of or relating to the operation or interpretation of this Agreement shall be settled by arbitration before one arbitrator in accordance with the Commercial Rules of the American Arbitration Association.  The arbitrator shall be jointly selected by the Client and Meritain and shall be a former federal judge, unless the parties agree otherwise.  Any award rendered by the arbitrator shall be final and binding upon the parties and judgment upon any such award may be entered in any court having jurisdiction thereof.  Arbitration shall take place in Buffalo, New York, or at a location mutually agreed upon by the parties.  The fees and expenses of the arbitrator shall be borne equally by the parties.  Each party shall pay its own fees and costs relating to any arbitral proceedings, including experts' and attorneys' fees.  The arbitrator shall render his/her determination in a manner consistent with the terms of this Agreement, and the arbitrator shall not be entitled to award punitive or exemplary damages.

6.14   <u>No Third Party Beneficiaries</u>.  Nothing expressed or implied in this Agreement is intended or shall be construed to confer upon, or give any third party (including without limitation, Participants), any rights or remedies against any party hereto.

6.15   <u>Force Majeure</u>.  Neither party shall be liable to the other party for any failure to satisfy an obligation, representation or warranty under this Agreement due to any cause beyond its reasonable control including, but not limited to, inclement weather, acts of God, war, riot, malicious acts of damage, civil commotion, strike, lockout, industrial dispute, power failure or fire.  If such a condition prevents either party's performance under this Agreement for a continuous period of thirty (30)  days or more, the other party may terminate this Agreement by properly delivered written notice.

6.16   <u>Subsequent Documents</u>.  The parties agree that each shall timely execute or provide any further documents that will be reasonably necessary to effect any term, condition, warranty or other part or aspect of this Agreement.

6.17   Assignment.   The Client may not assign this Agreement, in whole or in part, without the prior written consent of Meritain, which consent shall not be unreasonably withheld. Meritain may not assign this Agreement, in whole or in part, unless to an affiliate, or otherwise with the prior written consent of the Client, which consent shall not be unreasonably withheld.

6.18   Waiver.   No waiver of any term or provision of this Agreement, nor consent to any failure to perform under, or breach of this Agreement, shall be binding against either of the parties unless such party delivers a writing, signed by a duly authorized representative, expressly stating that it has waived any such term or provision. There shall be no implied waivers or consents. No waiver respecting an expressly identified term or provision, or consent to an expressly identified act or omission, will have any effect on the balance of this Agreement, or the balance of a party's conduct.

6.19   Approval of Agreement; Binding Nature.   Client acknowledges and agrees that it has been provided with the opportunity to engage its own counsel to review this Agreement. This Agreement shall inure to the benefit of and be binding upon the parties hereto and their respective legal representatives and permitted successors.

6.20   Notices.   Any notice or other communication permitted or required to be given under this Agreement shall be in writing and shall be (a) delivered in person, (b) mailed, by certified mail, return receipt requested, postage prepaid, (c) sent by recognized overnight courier, or (d) transmitted by facsimile, to the following:

> If to Meritain:
>
> Meritain Health, Inc.
> 300 Corporate Parkway
> Amherst, New York 14226
> Attn: CEO
>
> and:
>
> Corporate Counsel
> Meritain Health, Inc.
> 300 Corporate Parkway
> Amherst, New York 14226
>
> If to the Client:
>
> Michael Murphy
> Executive Vice President
> National General
> 59 Maiden Lane, 38th Floor
> New York, NY 10038

6.21   Miscellaneous.   Headings and subheadings herein are for convenience of reference only and are not of substantive effect. Terms used herein whether singular or plural shall be deemed to be singular or plural as the context may require.

6.22   Survival.   Notwithstanding anything herein to the contrary, the following provisions shall be deemed to survive the expiration or termination of this Agreement: Exhibit A, and Sections 2.2, 2.5, 2.6, 2.7, 3.4, 3.5, 3.10, each party's obligations of confidentiality and security, each party's indemnification obligations, and those terms and conditions that by their nature survive any termination or expiration of this Agreement.

**In Witness Whereof**, the parties have executed this Agreement on the dates set forth below.

**Meritain Health, Inc.**                                         **National General Management Corporation**

David C. Parker                                                   Print Name: Mike Weiner

Head of National Accounts                                         Title:___CFO_____

Date:_____4/18/14_____               Date:___4/23/2014_____

11

EXHIBIT A

## SERVICES & FEES

The following Services will be provided under this Agreement at the fees and charges indicated below.   These fees and charges are collectively referred to in this Agreement as "Fixed Costs."  Unless otherwise stated, the monthly Fixed Costs are calculated by multiplying the following rates by the applicable number of employees enrolled in the Policies each month and adding the result to the specific fees stated below or elsewhere in this Agreement.

The rates set forth in this Article V. are based on information provided to Meritain by the Client, including without limitation, information regarding the average number of employees covered under the Policies.   Meritain has relied on that information in developing these rates.

The Client agrees to pay the Fixed Costs set forth in this Agreement subject to the terms and conditions of this Agreement, as well as other applicable agreements Meritain or its affiliates may have with any network, insurer and/or prescription drug benefit manager.

|  | Per Employee Per Month |
|---|---|
| **Medical Administration** |  |
| **Case Management** | ████████ |
| **Utilization Review** |  |
| **PBM Cash Card via Scrip World / CVS Caremark** | ████████ |
|  | ████████ |
|  | ████████ |
| **Programming for startup** | ████████ |

**Optional and Non-Standard Administrative Fees and Premiums:**

**NY HCRA Reporting and MA, ME, MS, ID and TN State Surcharge and/or Assessment Administration Services Rate**-  Applies to filing, on Client's behalf, reports required and remitting Client's payments of assessments/surcharges under the New York Health Care Reform Act ("HCRA") and filing and remitting Client's payments of other state assessments/surcharges and related fees for state residents.  Client shall be responsible for similar charges in other states, as applicable.

**Printing Fees -** To be billed at cost.

**External Pharmacy Benefits Manager -**  In the event the Client utilizes an external Pharmacy Benefits Manager ("PBM"), Meritain may be required to provide eligibility information to the PBM on behalf of the Client, issue enrollee ID cards containing information about the prescription drug program, assist on coverage issues, and/or handle Client billing.  Meritain shall not charge Client for such services; provided, however, that Client agrees and consents that Meritain is permitted to receive from the PBM a fee, which may be in the form of commission payments, rebates, administrative fees or otherwise, for such services provided to the Client by Meritain, all as more particularly described herein. The Client fees for the dispensation and administration of prescription drugs to Participants will be billed in accordance with the terms of the Client's agreement with the PBM.

**Other Fees and Services**

(a)   <u>PPO Network Access Fee</u> -  If any PPO networks are accessed on behalf of the Client, Meritain will bill Client PPO access and integration fees for use of the PPO network for the following PPOs:

In the event that any of the above listed PPO networks bill access fees during run-out, Meritain will bill the Client for any applicable access, integration and/or run-out fees in addition to Meritain's run-out administration fees referenced in Section 2.5.1 of this Agreement.

(b)   <u>Out-of-Network Discount Program Fees</u> – Fees to be paid to out-of-network discount programs will be billed by Meritain on a contingent fee basis, based on the program's percentage fee of savings resulting from the discount program.

(c)   <u>Remittance Services</u> – From time to time, at the Client's request, Meritain may collect certain fees from Client for remittance to a third party, e.g. a broker commission.  In these instances, Meritain will pass-through all fees and will not collect or retain an administrative or service fee.

(d)   <u>Other Fees and Services</u> - The Client agrees to pay vendors' fees for certain additional services including, but not limited to (i) fees for independent case review, (ii) contingency fees for subrogation services, and (iii) contingency fees and other fees for cost management vendors, claim auditors, bill negotiators and discount programs.

A description of contingency fees, other administrative fees or similar compensation which Meritain may receive in connection with these vendor services is set forth below.

## PBM-Related Administrative Fees and Rebates

Meritain may provide enrollment and eligibility services, issuance of drug cards, billing and collection, stop-loss claim reimbursement and coordination, reporting, and consultation to Client's prescription drug benefits manager ("PBM").  In exchange for providing these services, Meritain may receive consideration from the PBM which may be in the form of administrative fees and/or prescription drug rebates.  Meritain may receive rebates from a PBM based on certain rebate-eligible prescriptions filled for Participants. Client acknowledges and agrees that Meritain may receive the administrative fees and rebates as set forth below:

PBM:

Administrative Fees & Commissions:

Rebates:

## Other Fees

From time to time, Meritain may engage third party vendors to perform or provide services in connection with this Agreement.  In some cases Meritain will pay the vendor as a subcontractor out of fees it has collected pursuant to this Agreement.

When Meritain provides or arranges for subrogation services, Client agrees to pay Meritain an administrative fee of ▮ of the gross savings resulting from such services.

In the event Meritain engages an out-of-network discount program, claim auditor, independent case reviewer, cost management vendor, bill negotiator, discount program or other contingency fee vendor to provide services on behalf of the Client, Meritain shall be entitled to retain a contingency fee up to ▮ of the net savings resulting from the engagement.

In cases where Meritain provides direct services, through its employees and agents, to negotiate bills, reduce claim amounts, access additional discounts or otherwise increase savings on behalf of the Client, Meritain shall be entitled to retain a contingency fee up to ███ of the savings resulting from such services.

The disclosures set forth in this Exhibit, represent Meritain's best reasonable estimate of the total amount of all direct and indirect compensation Meritain may receive in connection with this Agreement.  The actual amount may vary during the course of this Agreement based upon changes in the number of participants, utilization and other factors external to this Agreement.  With respect to all compensation Meritain actually receives as a result of this Agreement, Meritain will disclose such amounts to Client annually, upon request, to the extent required to assist Client in filing its Form 5500.

**Payment of Fees**- The Client agrees to pay Meritain the fees as indicated in this Agreement on the first day of each month for that month's administrative services. Meritain will provide appropriate documentation regarding fees due and owing on or about the first day of each month for that month's administrative services and based on eligible lives at the time the invoice is generated.  The Client hereby authorizes Meritain to withdraw the fees from its bank account on or before the fifth (5th) day of each month based on the monthly employee census. If the fees are not received by Meritain by the 15th of the month, the Client will be subject to a ███ late charge per month calculated from the first day of the month on all unpaid amounts. Adjustments to eligibility will be accounted for in the next invoice processing period.

EXHIBIT B

**BUSINESS ASSOCIATE AGREEMENT**

**THIS EXHIBIT** to the Administrative Services Agreement between Meritain and Client (the "Agreement") is incorporated by reference therein.  Client represents that it has the authority to execute, and hereby executes, this Exhibit A, for and on behalf of the health benefit plan for which Meritain provides plan administration services ("the Plan" for the purposes of this Exhibit A).

In conformity with the regulations at 45 C.F.R. Parts 160-164 (the "Privacy and Security Rules") Meritain will under the following conditions and provisions have access to, maintain, transmit, create and/or receive certain Protected Health Information:

1.  <u>Definitions</u>.  The following terms shall have the meaning set forth below:

    (a) <u>ARRA</u>. "ARRA" means the American Recovery and Reinvestment Act of 2009

    (b) <u>Breach</u>. "Breach" has the meaning assigned to such term in 45 C.F.R. 164.402.

    (c) <u>C.F.R.</u> "C.F.R." means the Code of Federal Regulations.

    (d) <u>Designated Record Set</u>. "Designated Record Set" has the meaning assigned to such term in 45 C.F.R. 164.501.

    (e) <u>Discovery</u>.  "Discovery" shall mean the first day on which a Breach is known to Meritain (including any person, other than the individual committing the breach, that is an employee, officer, or other agent of Meritain), or should reasonably have been known to Meritain, to have occurred.

    (f)  <u>Electronic Protected Health Information</u>.  "Electronic Protected Health Information" means information that comes within paragraphs 1(i) or 1(ii) of the definition of "Protected Health Information", as defined in 45 C.F.R. 160.103.

    (g) <u>Individual</u>. "Individual" shall have the same meaning as the term "individual" in 45 C.F.R. 160.103 and shall include a person who qualifies as a personal representative in accordance with 45 C.F.R. 164.502 (g).

    (h) <u>Protected Health Information</u> "Protected Health Information" shall have the same meaning as the term "Protected Health Information", as defined by 45 C.F.R. 160.103, limited to the information created or received by Meritain from or on behalf of Client.

    (i)  <u>Required By Law</u>. "Required By Law" shall have the same meaning as the term "required by law" in 45 C.F.R. 164.103.

    (j)  <u>Secretary</u>. "Secretary" shall mean the Secretary of the Department of Health and Human Services or his designee.

    (k) <u>Security Incident</u>.  "Security Incident" has the meaning assigned to such term in 45 C.F.R. 164.304.

    (l)  <u>Standard Transactions.</u>  "Standard Transactions" means the electronic health care transactions for which HIPAA standards have been established, as set forth in 45 C.F.R., Parts 160-162.

    (m) <u>Unsecured Protected Health Information</u>.  "Unsecured Protected Health Information" means Protected Health Information that is not secured through the use of a technology or methodology specified by guidance issued by the Secretary from time to time.

2.  Obligations and Activities of Meritain

   (a)  Meritain agrees to not use or disclose Protected Health Information other than as permitted or required by this Exhibitor as Required By Law.

   (b)  Meritain agrees to use appropriate safeguards to prevent use or disclosure of the Protected Health Information other than as provided for by this Appendix.

   (c)  Meritain agrees to mitigate, to the extent practicable, any harmful effect that is known to Meritain of a use or disclosure of Protected Health Information by Meritain in violation of the requirements of this Appendix.

   (d)  Meritain agrees to report to Client any Security Incident of the Protected Health Information not allowed by this Exhibit of which it becomes aware, except that, for purposes of the Security Incident reporting requirement, the term "Security Incident" shall not include inconsequential incidents that occur on a daily basis, such as scans, "pings" or other unsuccessful attempts to penetrate computer networks or servers containing electronic PHI maintained by Meritain.

   (e)  Meritain agrees to report to Client any Breach of Unsecured Protected Health Information without unreasonable delay and in no case later than sixty (60) calendar days after Discovery of a Breach. Such notice shall include the identification of each Individual whose Unsecured Protected Health Information has been, or is reasonably believed by Meritain, to have been, accessed, acquired, or disclosed In connection with such Breach.  In addition, Meritain shall provide any additional information reasonably requested by Client for purposes of investigating the Breach. Meritain's notification of a Breach under this section shall comply in all respects with each applicable provision of Section 13400 of Subtitle D (Privacy) of ARRA, 45 C.F.R. 164.410, and related guidance issued by the Secretary from time to time.

   (f)  Meritain agrees to ensure that any subcontractors that create, receive, maintain, or transmit Protected Health Information on behalf of Meritain agree in writing to the same restrictions and conditions that apply through this Exhibit to Meritain with respect to such information, in accordance with 45 C.F.R. 164.502(e)(1)(ii) and 164.308(b)(2), if applicable.

   (g)  Meritain agrees to provide access, at the request of Client, and in the time and manner designated by Client, to Protected Health Information in a Designated Record Set, to Client or, as directed by Client, to an Individual in order to meet the requirements under 45 C.F.R. 164.524.

   (h)  Meritain agrees to make any amendment(s) to Protected Health Information in a Designated Record Set that the Client directs or agrees to pursuant to 45 C.F.R. 164.526 at the request of Client or an Individual, and in the time and manner designated by Client.

   (i)  Meritain agrees to make (i) internal practices, books, and records, including policies and procedures, relating to the use and disclosure of Protected Health Information received from, or created or received by Meritain on behalf of, Client, and (ii) policies, procedures, and documentation relating to the safeguarding of Electronic Protected Health Information  available to the Secretary, in a time and manner designated by the Secretary, for purposes of the Secretary determining Client's or Meritain's compliance with the Privacy and Security Rules.

   (j)  Meritain agrees to document such disclosures of Protected Health Information as would be required for Client to respond to a request by an Individual for an accounting of disclosures of Protected Health Information in accordance with 45 C.F.R. 164.528.

   (k)  Meritain agrees to provide to Client the information collected in accordance with this Section to permit Client to respond to a request by an Individual for an accounting of disclosures of Protected Health Information in accordance with 45 C.F.R. 164.528.

   (l)  With respect to Electronic Protected Health Information, Meritain shall implement and comply with the administrative safeguards set forth at 45 C.F.R. 164.308, the physical safeguards set forth at

45 C.F.R. 310, the technical safeguards set forth at 45 C.F.R. 164.312, and the policies and procedures set forth at 45 C.F.R. 164.316 to reasonably and appropriately protect the confidentiality, integrity, and availability of the Electronic Protected Health Information that it creates, receives, maintains, or transmits on behalf of Client. Meritain acknowledges that, effective the later of the Effective Date of this Exhibitor February 17, 2010, (i) the foregoing safeguards, policies and procedures requirements shall apply to Meritain in the same manner that such requirements apply to Client, and (ii) Meritain shall be subject to the civil and criminal enforcement provisions set forth at 42 U.S.C. 1320d-5 and 1320d-6, as amended from time to time, for failure to comply with the safeguards, policies and procedures requirements and any guidance issued by the Secretary from time to time with respect to such requirements.

(m) With respect to Electronic Protected Health Information, Meritain shall ensure that any subcontractors that create, receive, maintain, or transmit Electronic Protected Health Information on behalf of Meritain, agree to comply with the applicable requirements of Subpart C of 45 C.F.R. Part 164 by entering into a contract that complies with 45 C.F.R. Section 164.314.

(n) If Meritain conducts any Standard Transactions on behalf of Client, Meritain shall comply with the applicable requirements of 45 C.F.R. Parts 160-162.

(o) Meritain acknowledges that, effective the later of the Effective Date of this Exhibitor February 17, 2010, it shall be subject to the civil and criminal enforcement provisions set forth at 42 U.S.C. 1320d-5 and 1320d-6, as amended from time to time, for failure to comply with any of the use and disclosure requirements of this Exhibit and any guidance issued by the Secretary from time to time with respect to such use and disclosure requirements.

(p) To the extent Meritain is to carry out one or more of Client's obligation(s) under Subpart E of 45 CFR Part 164, Meritain shall comply with the requirements of Subpart E that apply to Client in the performance of such obligation(s).

3. Permitted Uses and Disclosures by Meritain

3.1 General Use and Disclosure
Except as otherwise provided in this Appendix, Meritain may use or disclose Protected Health Information to perform its obligations under the Agreement, provided that such use or disclosure would not violate the Privacy and Security Rules if done by Client or the minimum necessary policies and procedures of Client.

3.2 Specific Use and Disclosure Provisions

(a) Except as otherwise provided in this Appendix, Meritain may use Protected Health Information for the proper management and administration of Meritain or to carry out the legal responsibilities of Meritain.

(b) Except as otherwise provided in this Appendix, Meritain may disclose Protected Health Information for the proper management and administration of Meritain, provided that disclosures are Required By Law, or Meritain obtains reasonable assurances from the person to whom the information is disclosed that it will remain confidential and used or further disclosed only as Required By Law or for the purpose for which it was disclosed to the person, and the person notifies Meritain of any instances of which it is aware in which the confidentiality of the information has been breached in accordance with the Breach and Security Incident notifications requirements of this Appendix.

(c) Meritain shall not directly or indirectly receive remuneration in exchange for any Protected Health Information of an Individual without Client's prior written approval and notice from Client that it has obtained from the Individual, in accordance with 45 C.F.R. 164.508, a valid authorization that includes a specification of whether the Protected Health Information can be further exchanged for remuneration by Meritain. The foregoing shall not apply to Client's payments to Meritain for services delivered by Meritain to Client.

(d) Except as otherwise provided in this Appendix, Meritain may use Protected Health Information to provide data aggregation services to Client as permitted by 45 C.F.R. 164.504(e)(2)(i)(B).

(e) Meritain may use Protected Health Information to report violations of law to appropriate Federal and State authorities, consistent with 45 C.F.R. 164.502(j)(1).

4. <u>Obligations of Client</u>.

4.1 <u>Provisions for Client to Inform Meritain of Privacy Practices and Restrictions</u>
(a) Client shall notify Meritain of any limitation(s) in its notice of privacy practices of Client in accordance with 45 C.F.R. § 164.520, to the extent that such limitation(s) may affect Meritain's use or disclosure of Protected Health Information.

(b) Client shall provide Meritain with any changes in, or revocation of, permission by Individual to use or disclose Protected Health Information, to the extent that such changes affect Meritain's uses or disclosures of Protected Health Information.

(c) Client agrees that it will not furnish or impose by arrangements with third parties or other Covered Entities or Business Associates special limits or restrictions to the uses and disclosures of its PHI that may impact in any manner the use and disclosure of PHI by Meritain under the Agreement and this Appendix, including, but not limited to, restrictions on the use and/or disclosure of PHI as provided for in 45 C.F.R. 164.522.

4.2 <u>Permissible Requests by Client</u>
Client shall not request Meritain to use or disclose Protected Health Information in any manner that would not be permissible under the Privacy and Security Rules if done by Client.

5. <u>Term and Termination</u>

(a) <u>Term</u>. The provisions of this Exhibit shall take effect on the effective date of the Agreement, and shall terminate upon expiration or termination of the Agreement, except as otherwise provided herein.

(b) <u>Termination for Cause</u>. Without limiting the termination rights of the parties pursuant to the Agreement and upon either party's knowledge of a material breach by the other party, the non-breaching party shall either:
i. Provide an opportunity for the breaching party to cure the breach or end the violation, or terminate the Agreement, if the breaching party does not cure the breach or end the violation within the time specified by the non-breaching party, or
ii. Immediately terminate the Agreement, if cure of such breach is not possible.

(c) <u>Effect of Termination</u>.
The parties mutually agree that it is essential for Protected Health Information to be maintained after the expiration of the Agreement for regulatory and other business reasons. Except as provided below, upon termination of this Agreement for any reason, Meritain shall return or destroy all Protected Health Information received from Client, or created or received by Meritain on behalf of Client. Notwithstanding the expiration of the Agreement, if Meritain determines that returning or destroying Protected Health Information is infeasible, Meritain shall notify Client of the conditions that make return or destruction infeasible. Meritain shall extend the protections of this Exhibit to such Protected Health Information, and limit further use or disclosure of the Protected Health Information to those purposes that make the return or destruction of the Protected Health Information infeasible.

6. <u>Miscellaneous</u>
(a) <u>Regulatory References</u>. A reference in this Exhibit to a section in the Privacy and Security Rules means the section as in effect or as amended, and for which compliance is required.

(b) <u>Amendment</u>. The Parties agree to take such action to amend this Agreement from time to time as is necessary for Client and Meritain to comply with the requirements of the HIPAA Privacy Rule, the HIPAA Security Rule, the HITECH Act, and HIPAA, as amended.

(c) <u>Survival</u>. The respective rights and obligations of Meritain under Section 5(c) of this Exhibit shall survive the termination of this Appendix.

(d) <u>Interpretation</u>. Any ambiguity in this Exhibit shall be resolved in favor of a meaning that permits Client to comply with the Privacy and Security Rules.

(e) <u>No third party beneficiary</u>. Nothing express or implied in this Exhibitor in the Agreement is intended to confer, nor shall anything herein confer, upon any person other than the parties and the respective successors or assigns of the parties, any rights, remedies, obligations, or liabilities whatsoever.

(f) <u>Governing Law</u>. This Exhibit shall be governed by and construed in accordance with the same internal laws as that of the Agreement.

The parties hereto have executed this Exhibit with the execution of the Agreement.

**Meritain Health, Inc.**

_____

Print Name:  David C. Parker

Head of National Accounts

Date:_____4/18/14_____

National General Management Corporation

_____

Print Name:_____Mike Weiner_____

Title:_____CFO_____

Date:_____4/23/2014_____

## SCHEDULE I to the Administrative Services Agreement
## PERFORMANCE GUARANTEES

This Performance Guarantee Agreement ("PGA") supplements and is made a part of the Administrative Services Agreement (defined below), and is effective as of the effective date of the ASA (the "Effective Date").

Note:  Separate Behavioral Health PGs are not available, results are blended with Medical.

### Performance Objectives

Meritain Health believes that measuring the activities described below are important indicators of how well it services National General Management Corporation ("Client").  To reinforce Client's confidence in Meritain Health's ability to administer their program, Meritain Health is offering guarantees in the following areas:

### PERFORMANCE GUARANTEE METRIC TABLE

| Performance Category | Minimum Standard | Penalty |
|---|---|---|
| **Implementation** | | |
| ▪ Implementation | Average evaluation score of satisfactory or higher | ■ |
| **Plan Sponsor Services** | | |
| ▪ Eligibility Updates | 97% within 3 business days 99.5% within 5 business days when submitted electronically. | ■ |
| **Claim Administration** | | |
| ▪ Turnaround Time | 80.0% of claims processed within 10 *business days* | ■ |
| ▪ Financial Accuracy | 98.0% | ■ |
| **Maximum Penalty Percentage** | | ■ |

## ARTICLE I
## DEFINITIONS

1.1     **ASA** means that **Administrative Services Agreement** between Meritain Health and the Client, effective as of January 1, 2014 that may be amended from time to time.

1.2     **Administrative Services Fees** means the fees for medical plan administration as set forth in Article V of the ASA and shall not include any other fees or charges including without limitation commissions and charges collected outside of the monthly billed base administrative services fees.

1.3     **Guarantee Period** means the period of time during which Meritain will perform those services subject to the applicable PG as set forth in Article IV of this PGA.

## ARTICLE II

## TERM; TERMINATION

2.1     The term of this PGA shall commence as of the Effective Date and shall continue through the final day of the initial term of the ASA. Notwithstanding anything to the contrary herein the performance guarantees described herein ("PGs") will be effective as of the effective date of the ASA.

2.2     This PGA shall not automatically renew concurrently with the ASA. Any renewal or any other amendment or modification of this PGA must be contained in a writing executed by both parties.

2.3     This PGA will terminate:

i.    upon written notice by Meritain in the event of the occurrence of a material change in the plan initiated by Client or by legislative action that impacts the claim adjudication process, member service functions or network management;

ii.    upon written notice by Meritain in the event of Client's failure to comply with its obligations under the ASA, where such failure causes Meritain to be unable to meet a PG described herein (e.g., a submission of incorrect or incomplete eligibility information).

iii.    automatically, without action by either party, upon the expiration of the initial term of the ASA, or any applicable renewal term of this ASA, if this PGA has been renewed.

iv.    automatically, without action by either party, upon any termination or expiration of the ASA, by either party for any reason, if not already terminated pursuant to subsection (iii) above.

No PGs shall apply for a Guarantee Period during which the ASA is terminated by Client or by Meritain Health.

2.4    PGs will not apply in the event Meritain processes run-out claims upon termination of the ASA, unless otherwise agreed to in a writing executed by both parties.

## ARTICLE III

## REFUND

3.1    Meritain will compile its performance guarantee results at regularly scheduled intervals as set forth herein. In the event that Meritain has failed to meet and cure one or more PGs, Meritain will provide direct payment or an invoice credit ("Penalty Payment") in Meritain's sole discretion.

3.2    The maximum Penalty Payment payable to Client under these PGs shall not exceed the Maximum Penalty Percentage as indicated in the Performance Guarantee Metric Table.

3.3    PGs will not be reconciled and payouts will not occur if Client is in default of paying any fees or expenses under the ASA.

3.4    Multiple failures of a given PG which are attributable to a single root cause shall only count as one failure.

3.5    The parties acknowledge and agree that failure to meet one or more PGs under this PGA shall not be deemed to be a material breach of the ASA, and Client's sole remedy for any such failure shall be the remedies set forth in this PGA.

3.6    Meritain shall not be liable for any Performance Guarantee failure that is caused by the actions or omissions of Client or its vendors, employers or participants, including without limitation any failure to fulfill its responsibilities under this PGA.

3.7    This PGA is not applicable to any acquisitions or business combinations entered into by Client until after Meritain performs an analysis of the acquisition or business combination, and agrees in writing to apply this PGA to the acquisition or business combination.

## ARTICLE IV

## PERFORMANCE GUARANTEE METRICS AND MEASUREMENT

4.1    **Implementation**

4.1.1    **Meritain's Guarantee**. Meritain guarantees an average evaluation score of "Satisfactory" or higher measured via timely responses to the Implementation Evaluation Tool, to be distributed to Client two weeks after the initial release of Claims.

4.1.2    **Client's Responsibilities.** Client will be responsible for providing key information to the Implementation Manager as close to the target dates as possible (e.g., finalized account structure, finalized plan of benefits, accurate eligibility files, signed legal agreements). Client also agrees to make Meritain aware of possible sources of dissatisfaction throughout the implementation period. Failure to timely respond to the Implementation Evaluation tool will invalidate the guarantee.

4.1.3    **Penalty and Measurement Criteria**. Each survey question will be given a rating of 1 - 5 with 1 = lowest, 5 = highest.  Meritain will tally the results from the evaluation tool when received.   If, at the end of the implementation process, the average score of the evaluations falls below a "3" (satisfactory), Meritain Health will calculate the appropriate Penalty Payment as indicated in the Performance Guarantee Metric Table.

4.1.4    **Guarantee Period**. This guarantee is effective for the implementation period immediately following the execution of the ASA.  The implementation period commences at the initial implementation meeting and runs through the implementation sign-off.

## 4.2    Eligibility Updates

4.2.1    **Meritain's Guarantee**. Meritain    guarantees    that    97.0%    of    non-Open Enrollment eligibility updates will be processed within 3 business days of receipt of complete and accurate data and 99.5% of non-Open Enrollment eligibility updates will be processed within 5 business days of receipt of complete, accurate and viable data (if a file requires adjustments, the customer will be notified by email as soon as the need is identified).

4.2.2    **Client's Responsibilities**. Timely provide complete enrollment and eligibility information to Meritain in a mutually agreed upon format. Complete enrollment and eligibility information is defined as employee name, address, plan selection, DOB, SSN, and covered dependent information if applicable as well as mutually agreed upon eligibility specifications. This PG is contingent upon the file being transmitted successfully to Meritain (files received after 12:00 Noon EST will be considered as having been received on the next business day).  Any eligibility data received which must be adjusted by Meritain using a data fix will negate the guarantee and normally adds 72 hours to the entire process.

4.2.3    **Penalty and Measurement Criteria**. Performance will be tracked monthly, reported quarterly. In the event this criteria is missed during a particular month, Meritain will have the opportunity to cure by meeting the performance standard in all three (3) months of the next Guarantee Period. Should Meritain fail to cure, the appropriate Penalty Payment as indicated in the Performance Guarantee Metric Table will be calculated based on those fees due for the Guarantee Period of the originating failure.

4.2.4    **Guarantee Period**. Successive three (3) month guarantee periods as measured from the effective date of the ASA.

## 4.3    Turnaround Time

4.3.1    **Meritain's Guarantee**. Meritain guarantees that the claim turnaround time during the guarantee period will not exceed 10 business days for 80.0% of the processed claims on a cumulative basis each year.

4.3.2    **Client's Responsibilities**. Timely communicate changes to benefit plan.

4.3.3    **Penalty and Measurement Criteria**. Meritain measures turnaround time from the date all the information necessary to process the claim is received by Meritain to the date that it is processed for payment or denied.  Performance will be tracked monthly, reported quarterly. In the event this criteria is missed during a particular month, Meritain will have the opportunity to cure by meeting the performance standard in all three (3) months of the next Guarantee Period. Should Meritain fail to cure, the appropriate Penalty Payment as indicated in the Performance Guarantee Metric Table will be calculated based on those fees due for the Guarantee Period of the originating failure. This PG will not apply during any Guarantee Period wherein the Client has instructed Meritain to hold or delay claims processing for any reason.

4.3.4    **Guarantee Period**. Successive three (3) month guarantee periods as measured from the first day of the next month following the release of claims for processing.

4.4    **Financial Accuracy**

4.4.1    **Meritain's Guarantee**.  Meritain guarantees that the Guarantee Period dollar accuracy of the claim payment dollars will be 98.0% or higher.

4.4.2    **Client's Responsibilities**. None.

4.4.3    **Penalty and Measurement Criteria**. Financial accuracy is measured using industry accepted random audit methodology.  The results are calculated by calculating the financial accuracy for a subset of claims (a stratum) and then extrapolating the results based on the size of the population and combining with the extrapolated results of the other strata.  Each overpayment and underpayment is considered an error; they do not offset each other. This includes both analyst adjudicated and system adjudicated claims. Performance will be tracked monthly, reported quarterly. In the event this criteria is missed during a particular month, Meritain will have the opportunity to cure by meeting the performance standard in all three (3) months of the next Guarantee Period. Should Meritain fail to cure, the appropriate Penalty Payment as indicated in the Performance Guarantee Metric Table will be calculated based on those fees due for the Guarantee Period of the originating failure.

4.4.4    **Guarantee Period**. Successive three (3) month guarantee periods as measured from the effective date of the ASA.