# EXHIBIT C

**AMENDMENT TO ADMINISTRATIVE SERVICES AGREEMENT**

This Amendment ("**Amendment**") effective as of **January 1, 2014** (the "**Amendment Effective Date**") amends the Administrative Services Agreement, (the "**Agreement**") entered into as of January 1, 2014 by and between Meritain Health, Inc. ("**Meritain**") and National General Management Corporation ("**Client**"). All terms capitalized and not defined in this Amendment, other than for reasons of grammatical convention, shall have the meanings set forth in the Agreement.

WHEREAS, the parties desire to amend the Agreement to accommodate additional services;

NOW, THEREFORE, the parties agree as follows:

**I.        ARTICLE 1. DEFINITIONS**

Section 1.8 of the Agreement is hereby amended by its deletion in its entirety and replaced with the following new Section 1.8:

"1.8   **Plan** or **Policy** means: (i) in the case of a Policy, the rules, regulations, procedures, directives, guidelines, instruments (including the plan document and summary plan description), and filed policy, setting forth and governing the duties of the Client, as the designated administrator, as well as the eligibility and benefit provisions of a Policy which provide for the payment or reimbursement of Covered Services, and (ii) in the case of a Plan, means the self-insured employee welfare benefit plan which the Client or its client has established, and the instrument or instruments, including the plan document and summary plan description, that set forth and govern the duties of the Client, as the designated Plan administrator, as well as the eligibility and benefit provisions of the Plan which provide for the payment or reimbursement of Covered Services. For the purposes of this Agreement, the term "Policy" as used in this Agreement shall be deemed to mean a Plan if referring to a self-funded employee welfare benefit plan."

**II.       ARTICLE II.  TERM & TERMINATION**

Article II of the Agreement is hereby amended by the addition of the following new Section 2.8:

"2.8   Statements of Work. All services provided by Meritain hereunder ("**Services**"), and Fees to be paid for such Services, shall be as set forth pursuant to written statements of work detailing the Services to be performed (each a "**Statement of Work**"). Each Statement of Work shall be deemed incorporated herein as an Exhibit A-# to this Agreement (e.g. Exhibit A-1, Exhibit A-2). All Statements of Work shall be mutually agreed by the parties and executed by their authorized representatives, provided that the parties agree that *Exhibit A-1, Short-Term Medical*, has been entered into upon the initial execution of the Agreement and requires no further signature or acknowledgment by the parties. Notwithstanding anything to the contrary herein, including in any Statement of Work: (i) in the event of any conflict between the terms of this Agreement and any Statement of Work, the express terms of such Statement of Work shall control, and (ii) the termination or non-renewal of any Statement of Work shall not affect this Agreement or any other Statement of Work then in-effect. Any Statement of Work may be terminated or non-renewed under the same terms as set forth in Section 2.3.

**III.     ARTICLE III.  MERITAIN'S RESPONSIBILITIES**

(a) Section 3.2(e) and Section 3.3(a) are hereby amended by the addition of the following phrase at the beginning of each respective section:

"With respect to Exhibit A-1,"

(b) Section 3.4 is hereby amended by the addition of the following phrase at the beginning of each respective section:

"Unless Meritain has been delegated specific fiduciary responsibilities under a Statement of Work,".

    (c) The parties agree that Meritain will not under any circumstance be obligated or required to use one or more of its assets to satisfy a Claim or expense that is the responsibility of either Client, Participant or other third party.

## IV.    ARTICLE IV. THE CLIENT'S RESPONSIBILITIES

Article IV of the Agreement is hereby amended by the addition of the following new Section 4.13:

"4.13    Payment of Fees.

    4.13.1  Services will be performed under any Statement of Work entered into hereunder at the fees and charges indicated in this Section 4.13 inclusive and within such Statement of Work ("**Fees**"). Unless otherwise stated Fees are calculated by multiplying the rates set forth in the applicable Statement of Work by the applicable number of employees enrolled in Policies (or otherwise covered under a Plan) each month and adding the result the specific Fees set forth in the applicable Statement of Work. The rates reflected in each Statement of Work are based on information provided to Meritain by Client, including without limitation information regarding the average number of employees covered under the Policies (or otherwise covered under a Plan). Meritain has relied upon that information in developing the applicable rates. Client will pay all Fees subject to the terms and conditions of this Agreement including the applicable Statement of Work, as well as any applicable agreements Meritain or its affiliates may have with any network, insurer, prescription drug benefit manager and/or any other third-party vendor."

    4.13.2  From time to time, Meritain may engage third party vendors to perform or provide services in connection with this Agreement. In some cases Meritain will pay the vendor as a subcontractor out of fees it has collected pursuant to this Agreement.

    4.13.3  When Meritain provides or arranges for subrogation services, Client agrees to pay Meritain an administrative fee of ■■■ of the gross savings resulting from such services.

    4.13.4  In the event Meritain engages an out-of-network discount program, claim auditor, independent case reviewer, cost management vendor, bill negotiator, discount program or other contingency fee vendor to provide services on behalf of the Plan, Meritain shall be entitled to retain a contingency fee up to ■■■ of the net savings resulting from the engagement.

    4.13.5  In cases where Meritain provides direct services, through its employees and agents, to negotiate bills, reduce claim amounts, access additional discounts or otherwise increase savings on behalf of the Plan, Meritain shall be entitled to retain a contingency fee up to ■■■ of the savings resulting from such services.

    4.13.6  The disclosures set forth in this Agreement, including any made in any Statement of Work, represent Meritain's best reasonable estimate of the total amount of all direct and indirect compensation Meritain may receive in connection with this Agreement. The actual amount may vary during the course of this Agreement based upon changes in the number of participants, utilization and other factors external to this Agreement. With respect to all compensation Meritain actually receives as a result of this Agreement, Meritain will disclose such amounts to Client annually, upon request, to the extent required to assist Client in filing its Form 5500.

**DISCLOSURE NOTICE REGARDING INSURANCE COMMISSIONS AND OTHER COMPENSATION**

U.S. Department of Labor rules permit the receipt of insurance commissions and other compensation by service providers such as Meritain (and its affiliates) if proper disclosure is given and an appropriate independent Plan fiduciary acknowledges in writing receipt of the information and approves the transaction. The commissions and other compensation to be paid to Meritain are set forth in this Agreement. By signing this Agreement and any Renewal Schedules of Services and Fees, Client certifies that it is an independent fiduciary of the Plan and that it acknowledges in writing receipt of the following information and approves the transactions referenced herein.

**Statement of Affiliation**

Prodigy Health Group, Inc. is a diversified health care services holding company whose subsidiaries include American Health Holding, Inc., Scrip World, LLC, Precision Benefit Services, Inc., Meritain Health, Inc. and PERFORMAX, Inc. Each affiliate is free to recommend to a client, products and services offered by other companies, which may include another affiliate; however, no affiliate is required to recommend an affiliate and no affiliate is limited or restricted in recommending the products and/or services of any vendor. Affiliates may be entitled to reasonable commissions and fees from other companies, including affiliates, and such commissions and fees are earned in the ordinary course of business in arms' length transactions. In addition, certain inter-company agreements exist amongst the affiliates to provide for the exchange of certain goods, services, and leases of real property at market-based rates of compensation.

**V.   EXHIBIT A SERVICES & FEES**

(a) Exhibit A is hereby amended by the deletion of the title "Exhibit A Services & Fees" and replaced with the following new title "Exhibit A-1: Statement of Work for Short-Term Medical."

(b) Exhibit A is hereby amended by the addition of the following paragraph:

"The term of this Statement of Work (this "**Short-Term Medical SOW**") shall begin as of January 1, 2014 and shall continue to and include December 31, 2017 (the "**SOW Term**"), unless sooner terminated as set forth herein. Unless either party provides the other with at least ninety (90) days written notice prior to the end of the then-current SOW Term, the SOW Term shall automatically renew for successive twelve (12) month renewal terms, provided that Meritain reserves the right to increase the fees payable by Client for any such renewal SOW Term to a mutually agreed upon rate. In the event the parties fail to agree upon new rates for fees, the existing fees for the prior SOW Term, plus a percentage amount equal to the change in the Consumer Price Index for all Urban Areas for the previous 12 months, shall apply for each renewal SOW Term. This Short-Term Medical SOW may be terminated by a party for any of the reasons set forth in Section 2.3 of the Agreement."

(c) The table of fees under Exhibit A is hereby deleted in its entirety and replaced with the following new table of fees as follows:

|  | PEPM= Per Employee Per Month ||
|---|---|---|
|  | **January 1, 2014 to December 31, 2016** | **January 1, 2016 to December 31, 2017** |
| **Medical Administration** | $8.00 PEPM | $7.45 PEPM |
| **Case Management Hourly Fee** | ██████████ ||
| **Utilization Review** |  | ████ |

0814 National General MSA-102414

| PBM Cash Card via Scrip World/Catamaran | ██████████ |
|---|---|
| Programming for startup | ██████████ |

(d) Exhibit A, subsection (a) under the section titled Other Fees and Services is hereby deleted in its entirety and replaced with the following new subsection (a):

"(a)     Preferred Provider Network Access Fee - If any PPNs are accessed on behalf of the Client, Meritain will bill Client the PPN access and integration fees for use of the following PPNs as set forth below:

  (i) For the period beginning January 1, 2014 to April 30, 2016:
  - Aetna PPO- ███ of Savings

  (ii) For the period beginning May 1, 2016 to December 31, 2017:
  - Aetna PPO- ███ Per Employee Per Month ("PEPM")
  - Aetna Choice Point of Service II Network – ███ PEPM. The Aetna Choice Point of Service II Network will only be available to Participants enrolled in the Short-Term Medical product at such time that the Client offers Plan designs that meet the requirements of the Aetna Choice Point of Service II Network.

In the event that any of the above listed PPN bill access fees during run-out, Meritain will bill the Client for any applicable access, integration and/or run-out fees in addition to Meritain's run-out administration fees referenced in Section 2.5.1 of this Agreement."

All other fees and requirements of this Exhibit A, unless specifically modified by this Amendment remain in full force and effect.

**VI.     SCHEDULE I to the Administrative Services Agreement, PERFORMANCE GUARANTEES**

(a) Schedule I to the Administrative Services Agreement is hereby amended by the deletion of the title "SCHEDULE I to the Administrative Services Agreement, PERFORMANCE GUARANTEES" and replaced with the following new title: "SCHEDULE 1 to Exhibit A-1: Short Term Medical – PERFORMANCE GUARANTEES."

(b) The first paragraph of Schedule 1 is hereby amended by its deletion in its entirety and is replaced with the following new first paragraph:

"This Performance Guarantee Agreement ("**PGA**") supplements and is made a part of Exhibit A-1 of the Agreement (the "**Short-Term Medical SOW**"), and is effective as of the effective date of the Short-Term Medical SOW. For the avoidance of doubt, in no event shall this PGA apply to any Services provided under any other Statement of Work entered into pursuant to the Agreement."

(c) Section 1.2 of Schedule 1 is hereby amended by its deletion in its entirety and replaced with the following new Section 1.2:

"1.2     **Administrative Service Fees** means the fees for medical plan administration as set forth in the Short-Term Medical SOW and shall not include any other fees or charges including without limitation commissions and charges collected outside of the monthly billed base administrative service fees."

(d) Article II of Schedule 1 is hereby amended by the replacement of "ASA" with the phrase "Short-Term Medical SOW" in each instance.

## VII.     **MISCELLANEOUS**

Except as specifically modified by this Amendment, all surviving terms and provisions of the Agreement remain in full force and effect.

**IN WITNESS WHEREOF,** the parties have executed this Amendment as of the Amendment Effective Date.

**Meritain Health, Inc.**                                                       **National General Management Corporation**

*/s/ David C. Parker*

Print Name: David C. Parker                                            Print Name: _____

Title: _____ Head of National Accounts _____       Title: _____

Date: _____ 9/7/16 _____                              Date: _____