```
IN THE UNITED STATES DISTRICT COURT
  FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

**TIMOTHY SHAFFER and**
**MARY SHAFFER,**

        **Plaintiffs,**

**v.**                  **//**    **CIVIL ACTION NO. 1:17CV195**
                                      **(Judge Keeley)**

**NATIONAL HEALTH INSURANCE COMPANY**
**and MERITAIN HEALTH, INC.,**

        **Defendants.**

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND**
**DENYING IN PART MERITAIN'S MOTION TO DISMISS [DKT. NO. 12]**

On October 12, 2017, the plaintiffs, Timothy and Mary Shaffer (collectively, "the Shaffers"), filed a complaint in the Circuit Court of Monongalia County, West Virginia, against the defendants, National Health Insurance Company ("National") and Meritain Health, Inc. ("Meritain") (Dkt. No. 1-3). After the defendants removed the case to this Court (Dkt. Nos. 1; 4), Meritain moved to dismiss the Shaffers' complaint. For the reasons stated on the record during the scheduling conference, and for the following reasons, the Court **GRANTS in part** and **DENIES in part** the motion (Dkt. No. 12).

### I. BACKGROUND

The Court's recitation of the facts is taken from the complaint and construed in the light most favorable to the Shaffers. See De'Lonta v. Johnson, 708 F.3d 520, 524 (4th Cir. 2013). National provides health insurance to individuals in West Virginia, and Meritain acts as "the administrator of and agent for

**SHAFFER v. NATIONAL HEALTH INSURANCE, ET AL.**          **1:17CV195**

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART MERITAIN'S MOTION TO DISMISS [DKT. NO. 12]**

the health insurance policies" issued by National (Dkt. No. 1-3 at 1, 6). On May 29, 2015, Mr. Shaffer was laid off from his job at a coal mine. Although eligible for COBRA benefits, the Shaffers could not afford the premiums. Instead, on July 1, 2015, they purchased health insurance policies from National and paid their premiums in a timely manner. Id. at 2.

In January 2016, Mr. Shaffer underwent treatment for cancer and incurred substantial medical bills. Mrs. Shaffer also incurred medical expenses. Rather than approve and pay the Shaffers' bills, National and Meritain repeatedly denied payment, often alleging that they needed additional information from medical providers. Id. at 3. But the explanations of benefits and letters sent to the Shaffers failed to specify what information was missing, and the defendants never provided reasonable explanations for their failure to pay the claims. Id. at 3-5.

The Shaffers' medical providers supplied the defendants with any reasonable information requested. At one point, when Mrs. Shaffer spoke to the defendants, she was advised that they needed pharmaceutical records. Mrs. Shaffer provided the requested records, but the defendants still failed to pay the claims. Id. at 3-4. Due to the defendants' failure to promptly investigate and pay the Shaffers' medical bills, medical providers have made collection

demands on the Shaffers, and the Shaffers have been forced to make payment arrangements. Id. at 5. Given the financial strain caused by Mr. Shaffer's unemployment, the defendants' failure to pay has caused the Shaffers substantial and severe distress. Id.

Due to Meritain's role as third-party administrator, the Shaffers allege that it "knew, understood, implemented and condoned the misconduct of National in failing to pay the plaintiffs' medical providers for many of the services they rendered to the plaintiffs even though it was well aware of the fact that it was delaying and/or denying payment for services covered by the health insurance policies." Id. at 6. The Shaffers further allege that they "have been treated with continual delays and/or denials" as "part of a pattern and practice of the defendants designed to delay or deny valid health insurance in this and, on information and belief, [] in other cases." Id. They make the following claims: 1) breach of contract, 2) Unfair Trade Practices Act/common law bad faith, and 3) conspiracy/aiding and abetting. Id. at 8-13.

## II. STANDARD OF REVIEW

Fed. R. Civ. P. 12(b)(6) allows a defendant to move for dismissal on the grounds that a complaint does not "state a claim upon which relief can be granted." When reviewing the sufficiency

3

of a complaint, a district court "must accept as true all of the factual allegations contained in the complaint." Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)). "While a complaint . . . does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation omitted). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

In order to be sufficient, "a complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" Anderson, 508 F.3d at 188 n.7 (quoting Twombly, 550 U.S. at 547). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A motion to dismiss "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992).

**SHAFFER v. NATIONAL HEALTH INSURANCE, ET AL.**                1:17CV195

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART MERITAIN'S MOTION TO DISMISS [DKT. NO. 12]**

In deciding a motion to dismiss, the Court "may also consider documents attached to the motion to dismiss, so long as they are integral to the complaint and authentic." Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). The Court has considered the following documents, which Meritain attached to its motion to dismiss: the National health insurance policy, the Administrative Services Agreement ("ASA") between National and Meritain, and an ASA amendment (Dkt. Nos. 12-1; 12-2; 12-3).

### III. DISCUSSION

"A federal court exercising diversity jurisdiction is obliged to apply the substantive law of the state in which it sits." Volvo Const. Equip. N. Am. v. CLM Equip. Co., Inc., 386 F.3d 581, 599-600 (4th Cir. 2004) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 79 (1938)). The Court must apply West Virginia law. See Beckley Mech., Inc. v. Erie Ins. & Cas. Co., 374 F. App'x 381, 383 n.1 (4th Cir. 2010) (unpublished decision) (citing Erie, 304 U.S. 64).

**A. Count One - Breach of Contract**

With regard to Count One, Meritain contends that it cannot be liable for breach of contract because it is not a party to the insurance policies issued by National (Dkt. No. 13 at 4-5). Indeed, "[i]t is well-settled that '[a] non-party to a contract cannot be

5

sued for breach of that contract.'" Ohio Valley Health Servs. & Educ. Corp. v. Riley, 149 F. Supp. 3d 709, 715 (N.D.W.Va. 2015) (quoting A. Hak Indus. Servs. BV v. TechCorr USA, LLC, 2014 WL 7243191, at *12 (N.D.W.Va. Dec. 19, 2014)). Moreover, "[t]he Shaffers recognize that Meritain is not liable for breach of contract" (Dkt. No. 21 at 2, 8). The Court thus **GRANTS** Meritain's motion to dismiss Count One.

**B.   Count Two - Bad Faith**

Although pleaded as one claim, Count Two actually raises different theories of common law bad faith and statutory bad faith. Meritain argues that each is defective. As discussed below, the Shaffers have not pleaded a viable common law bad faith claim against Meritain but have stated a claim for statutory bad faith.

   **1.   Common Law Bad Faith**

According to Meritain, because it is not a party to the Shaffers' insurance contracts, it cannot be liable for common law bad faith (Dkt. No. 13 at 5-6). This contention is well-founded. There is undoubtedly "a common law duty of good faith and fair dealing running from an insurer to its insured." Elmore v. State Farm Mut. Auto. Ins. Co., 504 S.E.2d 893, 896 (W. Va. 1998) (citing Hayseeds, Inc. v. State Farm Fire & Cas., 352 S.E.2d 73 (1986)). In

Elmore, however, the Supreme Court of Appeals rejected the possibility that a third party to an insurance contract can maintain a common law bad faith claim against an insurer:

> [T]he common law duty of good faith and fair dealing in insurance cases under [West Virginia] law runs between insurers and insureds and is based on the existence of a contractual relationship. In the absence of such a relationship there is simply nothing to support a common law duty of good faith and fair dealing on the part of insurance carriers toward third-party claimants.

Id. at 897. In Grubbs v. Westfield Insurance Co., this Court applied the holding in Elmore to a common law bad faith claim by a policyholder against an insurer's adjuster. 430 F. Supp. 2d 563, 567 (N.D.W.Va. 2006). The Court reasoned that insurance agents and adjusters have no contractual relationship with the insured, and thus owe no common law duty of good faith and fair dealing to an insured. Id. at 567-68.

As the Shaffers concede (Dkt. No. 21 at 8), the principles of Elmore and Grubbs dictate the same result in this case. Meritain allegedly acted as National's administrator and agent with regard to the policies (Dkt. No. 1-3 at 1, 6), but the Shaffers have not alleged a contractual relationship with Meritain that would impose a common law duty of good faith and fair dealing. See Elmore, 504 S.E.2d at 897; Grubbs, 430 F. Supp. 2d at 567. They thus cannot maintain a claim for common law bad faith, and the Court **GRANTS**

Meritain's motion to dismiss Count Two as it relates to the Shaffers' common law bad faith claim.

**2.   Statutory Bad Faith**

The provision of insurance is subject to extensive regulation in West Virginia. Of relevance here, the West Virginia Unfair Trade Practices Act ("UTPA") "regulate[s] trade practices in the business of insurance . . . by defining, or providing for the determination of, all such practices in this State which constitute unfair methods of competition or unfair or deceptive acts or practices." W. Va. Code § 33-11-1. Prohibited acts include "[n]ot attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear." W. Va. Code § 33-11-4(9)(f).

Although the UTPA does not specifically provide for private enforcement of its provisions, the Supreme Court of Appeals "has held that '[]an implied private cause of action may exist for violation by an insurance company of the unfair settlement practice provisions'" of W. Va. Code § 33-11-4(9). Taylor v. Nationwide Mut. Ins. Co., 589 S.E.2d 55, 59-60 (W. Va. 2003) (quoting Syl. Pt. 2, Jenkins v. J.C. Penney Cas. Ins. Co., 280 S.E.2d 252 (1981), overruled on other grounds by State ex rel. State Farm Fire & Cas.

Co. v. Madden, 451 S.E.2d 721 (1994)). If a party falls within the definition of a "person" under the UTPA and is "involved in the business of insurance," it may be held liable for violating the UTPA's good-faith requirement. Id. at 60-61 & n.17.

Meritain argues 1) that there is no private cause of action against third-party administrators, and 2) that it is not engaged in the business of insurance (Dkt. No. 13 at 7-10). These arguments are unavailing.

### a. Third-Party Administrator's are "persons."

Meritain contends that the Shaffers' claim is an improper attempt to extend the holding in Taylor v. Nationwide Mutual Insurance Co., 589 S.E.2d 55, 59-60 (W. Va. 2003) (Dkt. No. 13 at 7-8). In Taylor, the Supreme Court of Appeals was asked to decide whether there is a cause of action "to hold an insurance company's employee claims adjuster personally liable for violations of the [UTPA]." Taylor, 589 S.E.2d at 57. Because the UTPA includes a private cause of action, the court reasoned that it "need[ed] only to look to the express terms of the Act to determine whether individual claims adjusters fall within its scope." The UTPA places prohibitions on any "person," which includes the following categories:

> [A]ny individual, company, insurer, association, organization, society, reciprocal, business trust, corporation, or any other legal entity, including agents and brokers.

Id. at 60 (quoting W. Va. Code § 33-11-2(a)) (alteration in original). Because claims adjusters are "individuals," they fall within the scope of the UTPA and can be held personally liable. Id. at 61.

The Supreme Court of Appeals rejected several arguments that conflicted with the plain language of the statute. In particular, it reasoned that adjusters could be held individually liable for violations of their independent statutory duties under the UTPA, regardless of whether they are a party to the insurance contract or an agent of the insurance company. Id. at 61-62. It was also careful to limit its holding to matters presented by the certified question at issue:

> [W]e note that in this opinion we are not addressing and will leave for another day the issue of whether or not a cause of action exists to hold non-employee contractual or independent adjusters personally liable for violations of the Unfair Trade Practices Act inasmuch as that issue was not included in the certified question and was not briefed or argued in this case.

Id. at 62 n.17.

Here, much like insurance adjusters, who are "individuals" within the meaning of the UTPA, it is beyond dispute that Meritain

is a "company" that falls within the definition of a "person" covered by the Act. W. Va. Code § 33-11-2(a). Given this, "there appears to be little reason to doubt that, in the proper case, the West Virginia court would extend the rule of the Taylor case to" third-party administrators. Pinnoak Resources, LLC v. Certain Underwriters at Lloyd's, London, 394 F. Supp. 2d 821, 825 (S.D.W.Va. 2005) (Faber, J.). The plain language of the statute imposes duties and liability on companies such as Meritain.

Meritain nevertheless argues that the reasoning in Taylor is distinguishable because it involved an employee adjuster, and Meritain is merely a third-party administrator (Dkt. No. 13 at 8). For support, it points to the UTPA's provision regarding the responsibilities of an insurer when it uses an administrator:

> (a) If an insurer uses the services of an administrator, the insurer is responsible for determining the benefits, premium rates, underwriting criteria and claims payment procedures applicable to the coverage and for securing reinsurance, if any. . . .
>
> (b) It is the sole responsibility of the insurer to provide for competent administration of its programs.

W. Va. Code § 33-46-7. Meritain argues that, because the statute mentions administrators but imposes "sole responsibility" upon the insurer, the UTPA unambiguously intends to exclude administrators from accountability under the Act (Dkt. No. 13 at 8).

Meritain's argument is not supported by W. Va. Code § 33-46-7. The language quoted by Meritain merely defines the relationship between an insurer and its third-party administrator, making the insurer ultimately responsible for such things as "claims payment procedures" and "competent administration." W. Va. Code § 33-46-7. This does not indicate that the legislature intended to exclude third-party administrators from liability under the Act.[1] Thus, because Meritain is a "company" within the meaning of a "person" under the UTPA, the Shaffers have a private cause of action against it. Accord Pinnoak, 394 F. Supp. 2d at 825.

**b.   Meritain is in the business of insurance.**

Meritain further contends that, even if the UTPA provides a private cause of action against third-party administrators, it is not in the "business of insurance" and thus cannot be covered by the UTPA (Dkt. No. 13 at 8-10). The Supreme Court of Appeals has held that the UTPA and "the tort of bad faith apply only to those persons or entities and their agents engaged in the business of

---

[1] In fact, the Supreme Court of Appeals rejected a similar argument in Taylor. There the defendants contended that, because adjusters are defined to act "on behalf solely of . . . the insurer," W. Va. Code § 33-12B-1, they cannot be held liable for violating the UTPA. Taylor, 589 S.E.2d at 61. The court nonetheless found a private cause of action against adjusters in addition to the administrative remedies provided in the UTPA. Id.

insurance." Syl. Pt. 2, Hawkins v. Ford Motor Co., 566 S.E.2d 624 (W. Va. 2002) (holding that a self-insured company is not in the business of insurance); see also Rose ex rel. Rose v. St. Paul Fire & Marine Ins. Co., 599 S.E.2d 673, 675 (W. Va. 2004) (holding that an attorney is not engaged in the business of insurance because he has no obligations under the insurance contract).[2]

Because the parties do not dispute that National is engaged in the business of insurance, Meritain was engaged in the business of insurance if it acted as National's agent. "[A]n agent in the restricted sense is a representative of his principal in business or contractual relations with third persons," or one who "undertakes some business or to manage some affair for another by authority of or on account of the latter and to render an account

---

[2] Meritain relies primarily on Powell v. Chesapeake & Potomac Telephone Co. of Virginia, a Fourth Circuit case, which decided the extent to which ERISA preempted Virginia's UTPA by referencing the definition of the "business of insurance" found in the McCarran-Ferguson Act. 780 F.2d 419, 423 (4th Cir. 1985). The McCarran-Ferguson Act reserves to the states the regulation of the "business of insurance." Id. Powell understood the "business of insurance" to be confined to "spreading and underwriting of a policyholder's risk," and held that a plan administrator was thus not engaged in the "business of insurance." Id. at 423-24. This case is of limited persuasive value, having applied federal law to decide whether ERISA preempts a Virginia statute, nearly twenty years before the relevant West Virginia precedent.

of it." Wetzel v. Employers Serv. Corp. of West Virginia, 656 S.E.2d 55, 60 (W. Va. 2007) (internal citation omitted).

Although the ASA expressly disclaims an agency relationship, and its terms do "not include the power to exercise discretionary authority over Policy administration," the ASA charges Meritain to "[i]nvestigate, pay, settle, or deny all Claims in accordance with the terms of the applicable Policy" (Dkt. No. 12-2 at 4, 7). In other words, Meritain contracted to manage National's obligations under the insurance policies at issue. See Wetzel, 656 S.E.2d at 60. Indeed, Meritain itself argues that its actions "are Meritain's official acts as the agent of National" (Dkt. No. 24 at 9). Because Meritain may have acted as National's agent, it is plausible that Meritain is engaged in the business of insurance and subject to liability under the UTPA. Cf. Wetzel, 656 S.E.2d 55 (holding that agents of a self-insured company cannot be held liable under the UTPA); see also Stafford EMS, Inc. v. J.B. Hunt Transport, Inc., 376 F. App'x 317, 320 (4th Cir. 2010) (same).

**C.  Count Three - Conspiracy/Aiding and Abetting**

The entirety of the Shaffers' conspiracy/aiding and abetting claim is as follows:

>   61.  Defendants Meritain and National combined to engage in concerted action to accomplish an unlawful

14

> purpose, the denial of meritorious health insurance claims of the plaintiffs.
>
> 62. Meritain and National aided and abetted each other in denying the plaintiffs' meritorious health insurance claims.
>
> 63. Even if either defendant contends that it was not responsible for denying and/or delaying payment of plaintiffs' health insurance claims, it is nonethless liable for the damages suffered by the plaintiffs as an aider and abettor of the other and/or as a party who shared a common plan with the other defendant to delay and deny meritorious health insurance claims.
>
> 64. Defendants are therefore liable for compensatory and punitive damages as well as attorney fees and costs for damages as set forth in paragraphs 55 through 60 above which are incorporated by reference herein.

(Dkt. No. 1-3 at 12). Meritain argues primarily that these allegations are too "boilerplate" to meet the federal pleading standard (Dkt. No. 13 at 10-13). While the Shaffers have adequately pleaded a claim for aiding and abetting, their allegations against Meritain do not support a claim for civil conspiracy in West Virginia.

### 1.  Aiding and Abetting

West Virginia law imposes civil liability on a party who aids and abets tortious conduct:

> [F]or harm resulting to a third person from the tortious conduct of another, one is subject to liability if he

15

> knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself.

Taylor v. Robert W. Ackerman, P.C., No. 14-0961, 2015 WL 3875763, at *6 (W. Va. 2015) (memorandum decision) (quoting Syl. Pt. 5, Courtney v. Courtney, 413 S.E.2d 418 (1991)); see also Price v. Halstead, 355 S.E.2d 380, 386-67 (W. Va. 1987). Both common law and statutory bad faith claims are tortious in nature. See State ex rel. Owners Ins. Co. v. McGraw, 760 S.E.2d 590, 599 (W. Va. 2014) (Davis, J., concurring) (collecting cases) ("Our cases have made clear that statutory and common law bad faith claims are tort actions."); M & S Partners v. Scottsdale Ins. Co., No. 2:04-1221, 2006 WL 995136, at *2 (S.D.W.Va. Apr. 11, 2006) (same).

The allegations in the Shaffers' complaint are sufficient to support a claim for aiding and abetting. In addition to the allegations in Count Three, the Shaffers allege that:

> 33. Meritain, as its administrator, knew, understood, implemented and condoned the misconduct of National in failing to pay the plaintiffs' medical providers for many of the services they rendered to the plaintiffs even though it was well aware of the fact that it was delaying and/or denying payment for services covered by the health insurance policies.
>
> 34. Meritain is, on information and belief, liable for the misconduct alleged herein because it aided and abetted and/or conspired with National to deprive

16

>       plaintiffs of the benefits due to them under the
>       health insurance policies.

(Dkt. No. 1-3 at 6). The Shaffers further allege that Meritain requested information even when it had all necessary information. Id. at 11. Taken together, these allegations make it plausible that Meritain knew of National's tortious conduct, but continued to provide substantial assistance in the wrongful denial of the Shaffers' benefits. Taylor, No. 14-0961, 2015 WL 3875763, at *6. The Court therefore **DENIES** Meritain's motion to dismiss Count Three as it relates to aiding and abetting.

   **2.   Conspiracy**

West Virginia also recognizes a cause of action for civil conspiracy, otherwise known as "a combination to commit a tort." Dunn v. Rockwell, 689 S.E.2d 255, 268 (W. Va. 2009) (quoting Myers v. Wood, 175 S.E.2d 637, 645 (1970)). "A civil conspiracy is a combination of two or more persons by concerted action to accomplish some purpose, not in itself unlawful, by unlawful means. The cause of action is not created by the conspiracy but by the wrongful acts done by the defendants to the injury of the plaintiff." Id. at Syl. Pt. 8. "A civil conspiracy is not a per se, stand-alone cause of action; it is instead a legal doctrine under which liability for a tort may be imposed on people who did not

17

actually commit a tort themselves but who shared a common plan for its commission with the actual perpetrator(s)." <u>Id.</u> at Syl. Pt. 9.

Notably, "[a]gents and employees of a corporation cannot conspire with their corporate principal or employer where they act in their official capacities on behalf of the corporation and not as individuals for their individual advantage." <u>Cook v. Heck's Inc.</u>, 342 S.E.2d 453, 460 (W. Va. 1986) (quoting <u>Wise v. S. Pac. Co.</u>, 223 Cal. App. 2d 50, 72 (1963)). Insurance adjusters may thus not be sued for conspiring with the insurance company by which they are employed. <u>See, e.g.</u>, <u>O'Brien v. Allstate Ins. Co.</u>, No. 5:10CV40, 2010 WL 5204925, *3-*4 (N.D.W.Va. Dec. 20, 2010) (Stamp, J.).

Here, the Shaffers allege that Meritain was "at all times" acting as "agent for the health insurance policies" (Dkt. No. 1-3 at 6). Although the Shaffers now contend that certain contingent-fee arrangements between National and Meritain suggest that Meritain was acting "for [its] individual advantage" (Dkt. No. 36 at 4-5), no provision of the ASA cited by the Shaffers suggests that delaying or denying benefits resulted in financial gain for Meritain. For instance, the ASA contemplates a contingent fee when Meritain "arranges for subrogation services," engages discount programs and claim auditors, or negotiates bills and reduces claim

amounts (Dkt. No. 12-3 at 3). These are acts taken pursuant to a contract with National for the ultimate benefit of National and do not focus on Meritain's "individual advantage." See Cook, 342 S.E.2d at 460. Therefore, the Court **GRANTS** Meritain's motion to dismiss Count Three to the extent it alleges a civil conspiracy between National and Meritain.

## IV. CONCLUSION

In conclusion, the Court:

- **GRANTS** Meritain's Consent and Joinder to Removal (Dkt. No. 4);

- **GRANTS in part** and **DENIES in part** Meritain's Motion to Dismiss (Dkt. No. 12); and

- **GRANTS** the Shaffers' Motion to Consider Excerpts in Discovery (Dkt. No. 38).

It is so **ORDERED**.

The Court directs the Clerk to transmit copies of this Memorandum Opinion and Order to counsel of record.

DATED: April 27, 2018

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE